ALLIED AMERICAN INSURANCE COMPANY, Plaintiff-Appellee, v. VINCENTE ACOSTA AYALA, Defendant (Maria Dela Cruz, Indiv. and on Behalf of Her Minor Daughter, Brenda Dela Cruz, Defendant-Appellant; Milton Acosta *et al.*, Defendants).

Second District   No. 2—92—1232

Opinion filed July 9, 1993.—Rehearing denied August 20, 1993.

Erwin Cohn, of Cohn & Associates, of Chicago (Charles A. Cohn, of counsel), for appellant.

Keely Truax, of Parrillo, Weiss & O'Halloran, of Chicago (Michael J. O'Halloran, of counsel), and Ferris & Zweig, Ltd., of Gurnee, for appellee.

JUSTICE UNVERZAGT delivered the opinion of the court:

Maria Dela Cruz (Cruz), one of seven defendants, appeals from a declaratory judgment of the circuit court of Lake County. Plaintiff, Allied American Insurance Company, brought the declaratory judgment action to determine its liability in an underlying personal injury suit arising from an automobile accident. Cruz brought the personal injury suit individually and on behalf of her minor daughter who was injured in the accident. The judgment Cruz appeals from declared that plaintiff, which had issued an insurance policy to the owner of the vehicle involved in the accident, had no duty to defend or indemnify two of the declaratory judgment defendants, had no duties under the policy in question with respect to the accident, and that the policy was void.

On appeal, Cruz contends that: (1) the declaratory judgment was void because the trial court did not have jurisdiction over all the necessary parties; (2) conflicts of interest estopped plaintiff from denying coverage; (3) plaintiff's failure to notify certain defendants that they were being defended under a reservation of rights estopped plaintiff from denying coverage; (4) plaintiff's acceptance of an application signed by its agent but not the applicant estopped plaintiff from denying its liability under the policy on the grounds of misrepresentation; and (5) the trial court's finding of misrepresentation was against the manifest weight of the evidence.

The facts are as follows. Plaintiff issued an automobile insurance policy (the policy) to defendant, Vincente Acosta Ayala (Ayala), to cover Ayala's car for the period from January 1, 1991, through January 1, 1992. Plaintiff issued the policy pursuant to an "Application for personal auto policy" (the application), dated December 31, 1990, which was incorporated into the policy. Ayala did not sign the application. The only signature on the application was that of one of plain-

tiff's producers, Arne Redman. Ayala's son, defendant Milton Acosta, a/k/a Melliton Acosta (Acosta), testified that he telephoned someone (presumably Redman) for his father as his father's interpreter in order to get insurance for his father's car. During the telephone call, Acosta supplied the information requested in order to complete the application.

Acosta testified that he answered the questions asked of him by the person he called to get insurance. He testified that he told the man there were seven children, including himself, living in the household with Ayala. He testified that he told the man he drove the car once or twice a week to his job.

Plaintiff accepted the application with Redman's signature but without Ayala's signature. Plaintiff subsequently sent an automobile insurance policy to Ayala. The policy Alaya received included a copy of the application. The application shows the named insured as Vincente A. Ayala. The section of the application calling for the "Names of all drivers" contains information about only Ayala. The application shows the answer to a question asking whether there are "any children in the household who are not listed on the application" as a circle which encompasses both the yes and no answers, and no children are listed in the remarks section or anywhere else on the application.

On March 25, 1991, Acosta had his father's permission to use the car to drive to work. On that date, Acosta gave permission to defendant Elmer Gonzalez (Gonzalez) to drive the car. While Gonzalez was driving, the car was involved in an accident purportedly resulting in injuries to defendant Brenda Dela Cruz (Brenda), a passenger in the car at the time of the accident. Brenda, as a minor represented by her mother, Cruz, was a named plaintiff in the underlying personal injury suit brought against Ayala, Acosta and Gonzalez. The seven defendants in the declaratory judgment case were: Cruz, Brenda, Ayala, Acosta, Gonzalez, Elias Cocom and Leila Lamothe (Cocom and Lamothe are not involved in this appeal).

On July 28, 1992, after a bench trial, the trial court entered a judgment which stated, *inter alia*, "Judgment is entered in favor of plaintiff and against defendants Elias Cocom, Leila Lamothe, Elmer Gonzalez, Vincente Acosta Ayala, Milton Acosta, Melliton Acosta and Maria Cruz." Cruz filed an appeal from this judgment order.

Plaintiff filed a post-trial motion to modify the July 28, 1992, judgment order. Plaintiff's motion stated that the judgment order did not declare the rights and duties of the parties and that plaintiff was unsuccessful in its attempts to serve summons on Gonzalez despite diligent efforts, including the services of a private investigator.

On September 15, 1992, pursuant to plaintiff's post-trial motion, the trial court vacated the final paragraph of the earlier judgment order (quoted above) and modified the paragraph as follows:

"1. The final paragraph of this Court's judgment order of July 28, 1992 is hereby vacated; and this Court hereby enters declaratory judgment in favor of Allied American Insurance Company and against defendants, Vincente A. Ayala, Milton Acosta, Maria Dela Cruz, individually and on behalf of her minor daughter, Brenda Dela Cruz, Elias Cocom and Leila Lamothe as follows:

a. Under the policy issued to Vincente A. Ayala, Allied had no duty to defend or indemnify Milton A. Acosta and Elmer Gonzalez in the case of *Brenda Dela Cruz, a minor, by her mother, Maria Dela Cruz v. Milton Acosta and Elmer P. Gonzalez,* 91 L 868; and

b. Allied has no duties under said policy with respect to the accident of March 25, 1991 referred to herein; and,

c. Policy number 02366560 is void.

There is no just cause to delay enforcement or appeal of this order."

After the trial court granted her motion to dismiss her first appeal, Cruz appealed from both the July 28, 1992, judgment order and the September 15, 1992, judgment order.

The first issue on appeal is whether the trial court had jurisdiction over all the necessary parties in the declaratory judgment action. The record shows that Gonzalez, the driver of the car at the time of the accident, was not served. Plaintiff made several attempts to serve Gonzalez and hired a private investigator to find him to no avail. A note on the comments section of the second alias summons issued for Gonzalez states "left the country." No summons was issued for, nor any attempt made to individually serve, Brenda Dela Cruz, a minor passenger in the car who suffered injuries in the accident and was one of the named plaintiffs in the personal injury suit.

On appeal, Cruz contends that the declaratory judgment order, as modified, is void or manifestly erroneous because the trial court did not have jurisdiction over either Gonzalez or Brenda, both of whom, Cruz alleges, were necessary parties to the action. Cruz argues that the requirement to join a necessary party is absolute and any judgment entered without jurisdiction over a necessary party is void in its entirety. Cruz also contends that the trial court erred in not appointing a guardian *ad litem* for Brenda.

Plaintiff asserts that Cruz waived her rights to raise this issue with respect to both Gonzalez and Brenda. Alternatively, with respect to Gonzalez, plaintiff contends that a court may enter a declaratory judgment, service notwithstanding, if an insurer has made diligent efforts to serve the absent party. Alternatively, with respect to Brenda, plaintiff argues that service was sufficient and that a guardian *ad litem* was not necessary in this case.

An order entered without jurisdiction over an indispensable party is null and void if the indispensable party was not joined to the action. (*Schnuck Markets, Inc. v. Soffer* (1991), 213 Ill. App. 3d 957, 982.) Although Illinois has never adopted the term "indispensable party" in its Code of Civil Procedure statutes relating to joinder (Ill. Rev. Stat. 1991, ch. 110, par. 1—101 *et seq.*), Illinois courts frequently use the terms "indispensable party" and "necessary party" interchangeably. *Safeco Insurance Co. v. Treinis* (1992), 238 Ill. App. 3d 541, 545.

In a declaratory judgment action brought by an insurance company to determine its liability under one of its policies in an underlying vehicle accident claim, the driver of the vehicle is generally considered an indispensable party because a finding of no coverage would be injurious to the driver. (*Northland Insurance Co. v. Hawk* (1978), 59 Ill. App. 3d 155, 158.) Similarly, injured claimants are necessary parties to such a suit because they have a substantial interest in the viability of the policy. *M.F.A. Mutual Insurance Co. v. Cheek* (1977), 66 Ill. 2d 492, 495.

Because Gonzalez and Brenda were necessary parties to the declaratory judgment action but were not served, the question before us is whether the trial court judgment entered without jurisdiction over these absent necessary parties was void. We will first consider plaintiff's arguments which apply to both absent parties, and we will then address arguments pertaining to each party individually.

Plaintiff contends that both Gonzalez and Brenda waived the right to object on the jurisdictional issue. Although plaintiff raises numerous arguments in support of its contention, plaintiff cites no authority for all but one of its arguments, and for that reason alone we could deem them waived. (*Amp-Rite Electric Co. v. Wheaton Sanitary District* (1991), 220 Ill. App. 3d 130, 166.) The one argument for which plaintiff cites some authority, plaintiff's primary argument, is that defendants waived the right to object on the jurisdictional issue because defendants, by not raising the issue until closing arguments, did not make a timely objection.

It is well established that any party, or the court, *sua sponte,* may raise the issue of the absence of a necessary party at any time in the

trial court, or for the first time in a reviewing court. (*Oglesby v. Springfield Marine Bank* (1944), 385 Ill. 414, 423; *Zurich Insurance Co. v. Raymark Industries, Inc.* (1986), 144 Ill. App. 3d 943, 946.) However, objections to nonjoinder not made until the final stage of a proceeding will receive little favor. (*Burt v. Board of Education of Coal City Community Unit School District No. 1* (1985), 132 Ill. App. 3d 393, 397.) Courts should reject late objections, such as those made after judgments, unless the absent party was deprived of material rights without being heard or the absent party's interests in the litigation are so interconnected with the appearing parties' interests that the presence of the absent party is absolutely necessary. *State Farm Mutual Automobile Insurance Co. v. Haskins* (1991), 215 Ill. App. 3d 242, 245.

Here, Cruz raised her jurisdictional objections late in the proceedings. Cruz' attorney first mentioned the jurisdictional arguments in his closing argument. Accordingly, we will reject these arguments unless the absent party was actually deprived of material rights or the absent party's interests in the litigation are so interconnected with the interests of the parties who appeared before the court that the absent party's presence is absolutely necessary. We will make separate determinations of this question for Gonzalez and Brenda.

■ We conclude that the trial court's lack of jurisdiction over Gonzalez did not render the trial court judgment void. We base our conclusion on the following: (1) the trial court modified its judgment to delete Gonzalez' name from the list of defendants that the judgment applied to, thereby limiting any deprivation of his material rights; and (2) Gonzalez' interests in the litigation were not so interconnected with the interests of the parties who appeared that his presence was absolutely necessary. The primary interests of Gonzalez, the questions of permissive use and negligence, were not at issue in the declaratory judgment action. The primary interest of Ayala and Acosta in the declaratory judgment action, the question of misrepresentation, does not directly involve Gonzalez and could be fairly determined without his presence. Accordingly, we find that the trial court did not err when it entered its judgment without having jurisdiction over Gonzalez.

■ Before determining whether Brenda's presence was absolutely necessary, we must determine whether, as plaintiff asserts, the trial court had jurisdiction over Brenda. We find that the trial court lacked jurisdiction over Brenda. As a necessary party to the action, the trial court could only obtain jurisdiction by service upon the minor herself or by publication of notice. (*Bonnell v. Holt* (1878), 89 Ill. 71,

77.) Plaintiff's argument that substitution service was made on Brenda is without merit as the record clearly shows no summons was issued for Brenda individually. Plaintiff's argument that Brenda was represented by her mother and therefore it was not necessary to join Brenda is also unavailing because the representation doctrine does not apply to minors. (*In re Marriage of Vucic* (1991), 216 Ill. App. 3d 692, 701.) Even if the court had obtained jurisdiction of Brenda, the judgment would be voidable because the trial court did not appoint a guardian *ad litem* for Brenda. *In re Marriage of Strauss* (1989), 183 Ill. App. 3d 424, 427.

This lack of jurisdiction over Brenda renders the trial court's judgment void even though Cruz did not raise her objections until late in the proceedings. As Brenda was the injured party in the underlying tort action, the trial court judgment clearly deprived her of material rights without being heard. In addition, Brenda's presence was absolutely necessary because her interests are so interconnected with the interests of her mother, a party who was present. Without the underlying injury claim, there would be no need for the declaratory judgment action. Accordingly, we hold that the trial court erred when it entered its judgment without having jurisdiction over Brenda.

The next issue on appeal is whether the representation provided by plaintiff for Ayala, Acosta, and Gonzalez was improper due to conflicts of interest between plaintiff and these defendants (the negligence defendants) and among the negligence defendants so that plaintiff was estopped from denying coverage. Cruz contends that a conflict existed between plaintiff and the negligence defendants because plaintiff referred the defense of the negligence defendants to attorneys who knew plaintiff was providing a defense under a reservation of rights related to alleged material misrepresentations in the application which could render the policy void. Cruz reasons that under these circumstances there was a conflict between plaintiff and the negligence defendants because plaintiff's real defense no longer turned on Gonzalez' alleged negligence in operating the vehicle during the accident, but instead now turned on whether the policy was or was not void.

Cruz also contends that there was a conflict between Gonzalez and the other negligence defendants. Cruz asserts that the conflict arose because all Ayala and Acosta had to do to avoid liability for themselves was show that Gonzalez was not a permissive user or was not their agent.

Cruz argues that because of these two conflicts of interest plaintiff was required to advise the negligence defendants that they could

obtain their own attorneys at plaintiff's expense. Cruz maintains that because plaintiff did not so advise the negligence defendants, plaintiff was estopped from denying coverage under the policy.

Plaintiff contends that neither of these alleged conflicts existed. Plaintiff argues that the real question is not whether there was a conflict between it and the negligence defendants over whether the policy was void, but whether the issues in the declaratory judgment action it brought to determine coverage were the same as the issues in the underlying personal injury case. Plaintiff also argues that there was no conflict between Gonzalez and the other negligence defendants because it stipulated that Gonzalez was a permissive user and stated in open court that if the policy was not void it would cover all of the negligence defendants.

Our supreme court succinctly set out the general rule of estoppel with respect to liability insurance policy coverage disputes and an exception to the general rule when it said:

> "An insurer taking the position that a complaint potentially alleging coverage is not covered by a policy which provides that the insurer has the right and duty to defend any claims brought against the insured cannot simply refuse to defend the insured. It must defend the suit under a reservation of rights or seek a declaratory judgment that there is no coverage. If the insurer fails to do this, it is estopped from later raising policy defenses to coverage and is liable for the award against the insured and the costs of the suit, because the duty to defend is broader than the duty to pay. [Citation.] But, [there is] an exception to the general rule. An insurer must decline to defend where there is a conflict of interest between it and the insured. [Citations.] Instead of participating in the defense itself, the insurer must pay the costs of independent counsel for the insured." (*Murphy v. Urso* (1981), 88 Ill. 2d 444, 451-52.)

Another exception to the general rule applies when conflicts arise because an insurer is obligated to provide defenses for two or more insureds who have adverse interests, and, here again, outside counsel paid for by the insurer is required. *Illinois Municipal League Risk Management Association v. Seibert* (1992), 223 Ill. App. 3d 864, 872.

■ Where there is doubt as to whether an insurer must defend because there is doubt as to whether there is a conflict, the circumstances of the case determine whether a defense under a reservation of rights is or is not proper. (See *Thornton v. Paul* (1978), 74 Ill. 2d 132, 156.) The exceptions to the general rule requiring that an insurer defend an insured only apply where an actual conflict of interest ap-

pears; if the conflict is merely potential, the general rule applies. *Murphy*, 88 Ill. 2d at 458.

Whether a declaratory judgment action to determine an insurer's coverage obligations is appropriate is also factually determined. (See *Thornton*, 74 Ill. 2d at 158-59.) A declaratory judgment action is not appropriate when the issues in the underlying tort case are substantially the same as the declaratory judgment action issues, because collateral estoppel may act to prevent adjudication of the same issues in the underlying case; but where the issues in the underlying case and the declaratory judgment are separable, deciding the issue of coverage in a collateral proceeding is appropriate because neither party is prejudiced. *Murphy*, 88 Ill. 2d at 455.

Here, because plaintiff provided a defense for the negligence defendants under a reservation of rights, we must determine whether there was an actual conflict of interest between or among the parties which would render such a defense improper. Part of this determination will depend on whether the declaratory judgment action was appropriate under the above rules.

We will first address the question of whether there was a conflict between plaintiff and the negligence defendants. This issue typically arises where an insurer and the insured have mutually exclusive claims in the underlying tort case. (See, *e.g., Maryland Casualty Co. v. Peppers* (1976), 64 Ill. 2d 187, 196-97 (if tort defendant's conduct was intentional, he was liable but insurer was not; if defendant was negligent, insurer was liable).) In this case, however, Cruz contends there was a conflict between plaintiff and the negligence defendants merely because plaintiff sought to adjudicate its coverage rights in the declaratory judgment action, advised the attorneys it assigned to represent the negligence defendants of this fact, and advised them to defend under a reservation of rights.

■ We find that under these circumstances there was no conflict between plaintiff and the negligence defendants. Contrary to Cruz' implication, a declaratory judgment action to determine coverage rights is proper and does not engender any conflict of interest itself unless the parties have mutually exclusive claims in the underlying action. (See *Royal Insurance Co. v. Process Design Associates, Inc.* (1991), 221 Ill. App. 3d 966, 976.) Here, there are no such mutually exclusive claims and the issues in the underlying action and the declaratory judgment action are separate. The only issue in the declaratory judgment action is misrepresentation and the issue in the tort action is negligence. Accordingly, we cannot agree with Cruz that there was a conflict of interest between plaintiff and the negligence

defendants which made plaintiff's defense under a reservation of rights improper.

We also find there was no actual conflict between Gonzalez and the other negligence defendants. Although we agree with Cruz that there was a theoretical conflict because of the permissive use and agency issues, Cruz failed to show an actual conflict which is necessary to question the defense under a reservation of rights. The declaratory judgment action established that plaintiff stipulated that Gonzalez was a permissive user and that, if the policy was not declared void, plaintiff would defend all of the negligence defendants. Strictly speaking, this case does not involve a question of a policy defense, *per se*. Rather, the question is whether the policy was void due to misrepresentation in the application. Plaintiff does not contend that the policy does not cover the negligence defendants if it is not void. Also reducing the likelihood of an actual conflict among the negligence defendants over their permissive use issue is the signed statement Ayala gave to plaintiff's claims supervisor on June 11, 1991. In that document, Ayala stated that he gave Acosta permission to drive the car to work on the day of the accident and that Acosta "gave permission for the driver of the vehicle to drive the car." We therefore conclude that Cruz has failed to show an actual conflict between the negligence defendants.

For the above reasons, we find that plaintiff's control of the defense under a reservation of rights was not improper on the ground of a conflict of interest because there was no conflict of interest. Accordingly, plaintiff was not estopped from denying coverage or, more correctly, seeking to determine whether the policy was void on those grounds.

■ Cruz next contends that because plaintiff did not properly notify Gonzalez, and perhaps all three of the negligence defendants, that it was conducting the defense under a reservation of rights, plaintiff was estopped from denying coverage of the injury claim. Plaintiff's claims manager testified that he sent reservation of rights letters to each of the negligence defendants. A copy of a reservation of rights letter addressed to Ayala is in plaintiff's claims file which was introduced into evidence. The letter indicates that carbon copies were sent to Acosta and Gonzalez. However, on cross-examination, the claims manager testified that the claims file did not contain evidence that the letters were sent by certified mail or that there were return receipts for any of the letters. The claims file did not contain copies of the alleged carbon copies or any other evidence indicating what address they were purportedly sent to.

Cruz contends that the evidence shows that plaintiff did not send a reservation of rights letter to Gonzalez and that there are questions whether plaintiff even sent such a letter to Ayala. Cruz argues that if plaintiff has no evidence that Gonzalez actually received a reservation of rights letter, then Gonzalez is presumed to have been prejudiced and plaintiff is estopped from denying coverage to him under the Ayala policy.

Plaintiff contends that it notified the negligence defendants at the outset of the personal injury action that it was providing a defense for them under a reservation of rights. Plaintiff also contends that it did more than it was required to do to preserve its rights to contest coverage when it brought the declaratory judgment action. Finally, plaintiff asserts that the cases cited by Cruz are inapposite because they all deal with policy defenses, *i.e.*, defenses under the terms of the policy, while plaintiff has not made any policy defenses but simply claims the policy was void *ab initio* due to material misrepresentations in the application. Plaintiff argues that Cruz' cases do not support her estoppel claim.

A reservation of rights is a means by which an insurer seeks to suspend the operation of estoppel doctrines which can prevent an insurer from raising denial of coverage issues where an insurer believes the policy does not provide coverage. (*Royal Insurance Co. v. Process Design Associates, Inc.* (1991), 221 Ill. App. 3d 966, 973.) To suspend estoppel, a reservation of rights is required when an insurer defends an action against the insured in which the existence of a policy defense may turn upon the facts to be determined in that litigation. (*Cowan v. Insurance Co. of North America* (1974), 22 Ill. App. 3d 883, 896.) When a reservation of rights is required, an insurer must adequately inform the insured of the rights it intends to reserve. *Cowan*, 22 Ill. App. 3d at 896.

Here, Cruz' arguments notwithstanding, we find that there was evidence that plaintiff notified the negligence defendants of the reservation of rights. Although Cruz implies that evidence of a certified mailing was required, Cruz cites no authority for that proposition, and for that reason alone we could deem it waived. (*Amp-Rite Electric Co.*, 220 Ill. App. 3d at 166.) In addition, plaintiff's claims manager testified that he mailed both Acosta and Gonzalez copies of the reservation of rights letter sent to Ayala. Although Cruz disputes this testimony, the trial court, which had the benefit of observing the demeanor and assessing the credibility of the witnesses, decided in favor of plaintiff. We will not reverse a trial court, in a bench trial, on a factual issue where the testimony is conflicting unless the trial court

actions are against the manifest weight of the evidence. (*Flynn v. Cohn* (1992), 154 Ill. 2d 160, 160-67.) Based on the evidence in the record, we cannot say that the trial court actions here were against the manifest weight of the evidence.

We also agree with plaintiff that the cases Cruz cited in support of her estoppel argument are inapposite. Those cases all involve policy defenses, while this case only involves a question of whether a policy, which admittedly otherwise covers the negligence defendants, was void.

For these reasons, we find that plaintiff was not estopped from denying coverage of the personal injury claim on the ground that plaintiff failed to properly notify the negligence defendants it was defending them under a reservation of rights.

■ The next issue on appeal is whether plaintiff was estopped from denying its liability under the policy on the ground of misrepresentation. The alleged misrepresentation was the nondisclosure on the application of Acosta, Ayala's son. At the time of the application, Acosta was a 17-year-old member of Ayala's household and a regular driver of Ayala's car, the insured vehicle.

It is undisputed that the application showed that the only driver of the insured's vehicle was Ayala, the insured. In the space on the application for the listing of drivers, the only information shown pertained to Ayala. There is no mention of Acosta or any other driver anywhere on the application, including the remarks section. The parties disagree about the answer to a question on the application as to whether there are any children in the applicant's household. Cruz asserts that both the yes and no answers were circled. Plaintiff asserts that, despite the testimony of its underwriting manager that both yes and no appear to be circled, only the no answer was circled.

On appeal, Cruz does not dispute plaintiff's position that the failure to disclose a teenage regular driver of a vehicle by an applicant for insurance on the vehicle is a material misrepresentation. Cruz contends, however, that misrepresentation should not apply in this case because it would be unfair to hold Ayala to the language of an application he did not sign. Cruz also contends that because Redman, in signing the application, was plaintiff's agent, plaintiff cannot complain about any alleged misrepresentation in an application signed by its own agent rather than the insured. To support her agency contention, Cruz essentially argues that plaintiff acquiesced in Redman's practice of submitting applications for insurance signed by him but not the applicant and that this shows that Redman was plaintiff's agent.

Plaintiff counters that Cruz failed to present any evidence that Redman was plaintiff's agent. Plaintiff argues that Redman was an insurance broker under no employment from a single insurer. Plaintiff asserts that as a general rule an insurance broker is the agent of the insured and asserts that Cruz did not present evidence to bring this case under an exception to that general rule.

Plaintiff also contends that it is not unfair to hold Ayala to the language of the application even though he did not sign it because the application was included in the policy and condition 17 of the policy provides:

"17. **Declarations.** By the acceptance of this policy, the insured named in Item 1 of the declarations agrees that the statements contained in the application, a copy of which is attached to and forms a part of this policy, have been made by him or on his behalf and that said statements and the statements in the declarations and in any subsequent application accepted by the company are offered as an inducement to the company to issue or continue this policy and that the same are his agreements and representations, and that this policy is issued and continued in reliance upon the truth of such statements and representations and that this policy embodies all agreements existing between himself and the company or any of its agents relating to this insurance."

Plaintiff argues that this clause and other clauses in the policy created a duty for Ayala to report any untrue statements in the application once he received the policy whether he had signed the application or not.

Thus, the questions before us are whether Redman acted as plaintiff's agent when he accepted an unsigned application, and, if so, whether that precludes plaintiff from raising the issue of misrepresentation. We will first address whether Redman was plaintiff's agent as Cruz contends.

"An insurance broker is one who procures insurance and acts as middleman between the insured and the insurer, and solicits insurance business from the public under no employment from any special company, but, having secured an order, places the insurance with the company selected by the insured, or, in the absence of any selection by him, with the company selected by the broker." (*Galiher v. Spates* (1970), 129 Ill. App. 2d 204, 206-07.) An insurance agent is one who has a fixed and permanent relation to the companies he represents and who has certain duties and allegiances to such companies. (*Krause v. Pekin Life Insurance Co.* (1990), 194 Ill. App. 3d 798, 805.)

As a general rule, an insurance broker acts as an agent of the insured rather than an agent of the insurer; however, a broker can act as the agent for either the insured or the insurer or both. *State Security Insurance Co. v. Burgos* (1991), 145 Ill. 2d 423, 431.

The determination of whether a person is an agent for the insured, the insurer, or both, is generally a question of fact; however, where the evidence clearly shows the person is the agent of the insured the issue becomes a question of law. (*Davidson v. Comet Casualty Co.* (1980), 89 Ill. App. 3d 720, 723.) The party asserting the agency relationship has the burden of proving the agency's existence by a preponderance of the evidence. (*F D L Foods, Inc. v. Kokesch Trucking, Inc.* (1992), 233 Ill. App. 3d 245, 256.) A person's conduct in a given transaction, rather than his title, determines whether he is an agent or a broker. *Zannini v. Reliance Insurance Co. of Illinois, Inc.* (1992), 147 Ill. 2d 437, 452-53.

Here, the facts appear to support a finding that Redman was not plaintiff's agent. According to the terms of the producer's agreement between Redman and plaintiff, Redman was an independent contractor. Plaintiff's underwriting manager at the time Ayala applied for insurance through Redman testified that plaintiff considered its producers to be independent insurance brokers. The four factors traditionally used to determine whether a person was acting as an agent of the insured or the insurer tend to show that Redman was Ayala's agent and not plaintiff's.

Nonetheless, Cruz contends that under the principles espoused in a recent supreme court decision (*State Security Insurance Co. v. Burgos* (1991), 145 Ill. 2d 423) Redman was plaintiff's agent when he submitted the application without Ayala's signature because he did so with apparent authority. We agree.

Apparent authority is authority that a reasonably prudent person, in view of the conduct of the principal, would naturally suppose the agent to possess. (*Burgos*, 145 Ill. 2d at 432.) Having created the appearance of authority, the principal is estopped from denying it to the detriment of a third party. 145 Ill. 2d at 432.

The course of dealings between an insurance broker and an insurer may establish apparent authority between the broker and the insurer. (145 Ill. 2d at 432.) Apparent authority in an insurance broker thus arises when an insurer knowingly causes or permits the broker to act so as to justify the insured in believing that the broker possesses the authority exercised. (145 Ill. 2d at 432.) Acquiesence by the insurer in an insurance broker's conduct is sufficient to establish the broker's apparent authority. 145 Ill. 2d at 432.

Applying these principles to the evidence in the record shows that Redman had apparent authority to submit applications not signed by the applicant to plaintiff and that Redman was therefore plaintiff's agent when he engaged in that conduct. Acosta testified that he called someone (presumably Redman, who signed the application) to obtain insurance for his father's (Ayala's) car. Acosta further testified that he gave the man he called the information that the man requested, including the facts that he lived in the household and drove the car regularly. Subsequently, plaintiff sent Ayala an insurance policy covering Ayala's car. The policy contained a copy of the application which Redman had signed and submitted to plaintiff without Ayala's signature. Based on plaintiff's conduct, a reasonably prudent person in Ayala's position could conclude that plaintiff authorized Redman to submit applications for insurance without the applicant's signature.

Moreover, the evidence shows that plaintiff actually acquiesced in Redman's conduct further establishing Redman's apparent authority. The testimony of both plaintiff's underwriting manager and its claims manager shows that plaintiff knowingly accepted applications without the applicant's signature from Redman. The underwriting manager testified that in plaintiff's view the producer was acting as the applicant's agent and that justified plaintiff's acceptance of an application with only the producer's signature on it. The claims manager testified that it was plaintiff's standard business practice to issue policies based only on an application even if the application was not personally signed by the applicant.

For all these reasons, we find that Redman had apparent authority to submit applications to plaintiff without the applicant's signature and that he therefore was plaintiff's agent when he engaged in that conduct. Thus, when Redman submitted Ayala's application to plaintiff without Ayala's signature he did so as plaintiff's agent. Accordingly, the trial court erred when it determined that Redman was not plaintiff's agent in this conduct.

■ The next question before us is whether Redman's agency estopped plaintiff from asserting misrepresentation as a basis for cancelling Ayala's policy. An insurer may generally refuse to honor an insurance contract if an applicant made misrepresentations either with actual intent to deceive or which materially affected the acceptance of the risk by the insurer. (*Good v. National Life & Accident Insurance Co.* (1976), 37 Ill. App. 3d 831, 834.) However, when an insurance applicant gives correct answers to the insurer's agent and the agent fills in the application with incorrect answers, the insurer is estopped from

denying its liability even if the application is signed by the applicant. *Guter v. Security Benefit Association* (1929), 335 Ill. 174, 180.

The insurer cannot rely on incorrectly recorded answers to assert misrepresentation, even if the insured knows the agent has entered information different from that he provided, where the information is entered pursuant to the agent's advice, suggestion or interpretation. (*Logan v. Allstate Life Insurance Co.* (1974), 19 Ill. App. 3d 656, 660.) However, knowledge of the agent will not be imputed to the insurer if the applicant acted in bad faith or colluded with the insurer's agent. *Marionjoy Rehabilitation Hospital v. Lo* (1989), 180 Ill. App. 3d 49, 53.

Here, the record shows that the insurer's agent received correct answers from the insured but incorrectly filled out the application. While there is no direct evidence to show that the person Acosta called to get insurance was Redman, the application was signed by Redman and plaintiff has not shown that Acosta did not call Redman. Based on this evidence, we conclude that the person Acosta talked to when he called to get insurance was Redman.

Acosta testified that he told the person he called that there were seven children, including himself, in Ayala's household. Acosta also testified that he told the person he called that he drove the car to work once or twice a week. There is nothing in the record to dispute this testimony.

The record also shows that Redman, plaintiff's agent, submitted the application with incorrect or ambiguous answers to the questions relevant to the alleged misrepresentation. The question on the application regarding drivers contained only information regarding Ayala. The question regarding children in Ayala's household was answered with a circle which encompasses both the yes and no answers.

There is nothing in the record to show Ayala or Acosta acted in bad faith or in collusion with Redman. Plaintiff simply has not produced any evidence regarding Redman's construction of the facts.

Plaintiff's reliance on the policy clauses requiring the insured to report inaccurate representations on the application is misplaced. Clauses in the policy indicating that the insured has verified the information as true do not prevent the imputation of the knowledge of the agent to the insurer. *Johnson v. Royal Neighbors of America* (1912), 253 Ill. 570, 574.

Based on the foregoing, we conclude that plaintiff's agent, Redman, received correct answers to the application questions but filled in the application with incorrect answers. Accordingly, plaintiff is

estopped from denying its liability under the policy on the ground of misrepresentation.

Because of our conclusion that plaintiff is estopped from denying its liability under the policy on the ground of misrepresentation, it is not necessary to address the issue of whether the trial court's finding of misrepresentation was against the manifest weight of the evidence.

In summary, we find that the trial court did not err when it issued its declaratory judgment order without jurisdiction over Gonzalez. We also find that plaintiff was not estopped from denying coverage on the grounds of alleged conflicts of interest or an alleged failure to send notice that it was defending under a reservation of rights. However, we find that the trial court erred when it issued its declaratory judgment order without jurisdiction over Brenda Dela Cruz and the declaratory judgment order was therefore void. We also find that plaintiff was estopped from denying its liability under the policy on the grounds of misrepresentation.

Based on the foregoing, the judgment of the trial court is affirmed in part and reversed in part, and the cause is remanded to the trial court for further proceedings consistent with this opinion.

Affirmed in part; reversed in part and remanded.

WOODWARD and COLWELL, JJ., concur.