# ILLINOIS OFFICIAL REPORTS

## Appellate Court

---

*Howerton v. Prudential Insurance Co. of America*, 2012 IL App (1st) 110154

---

| | |
|---|---|
| Appellate Court Caption | ANNA HOWERTON, FLOYD R. BURNS, and CATHERINE KUNICKI, a/k/a Bonvich, Individually and on Behalf of All Other Individuals and/or Entities Similarly Situated, Plaintiffs-Appellants, v. PRUDENTIAL INSURANCE COMPANY OF AMERICA, a New Jersey Corporation; ARTHUR F. RYAN, Chairman and Chief Executive Officer; FRANKLIN E. AGNEW, FREDERIC K. BECKER, GILBERT F. CASELLAS, JAMES G. CULLEN, CAROLYNE K. DAVIS, ROGER A. ENRICO, ALLAN D. GILMOUR, WILLIAM H. GRAY III, JON F. HANSON, GLEN H. HINER, CONSTANCE J. HORNER, GAYNOR N. KELLEY, BURTON G. MALKIEL, IDA F.S. SCHMERTZ, CHARLES R. SITTER, DONALD L. STAHELI, RICHARD M. THOMSON, JAMES A. UNRUH, P. ROY VAGELOS, STANELY C. VAN NESS, PAUL A. VOLCKER, and JOSEPH H. WILLIAMS, Defendants-Appellees. |
| District & No. | First District, First Division<br>Docket No. 1-11-0154 |
| Filed | October 22, 2012 |
| Held<br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | An Illinois action filed by policyholders of a New Jersey life insurance company contesting the consideration plaintiffs received when the company underwent demutualization was properly dismissed on the grounds that the New Jersey Insurance Commissioner was an indispensable party to the action challenging his order approving the demutualization and the New Jersey appellate court had exclusive jurisdiction over the matter. |

| | |
|---|---|
| Decision Under Review | Appeal from the Circuit Court of Cook County, No. 01-CH-5145; the Hon. Peter Flynn, Judge, presiding. |
| Judgment | Affirmed. |
| Counsel on Appeal | Robert A. Holstein and Springer, Casey & Dienstag, P.C., both of Chicago, for appellants. |
| | Novack & Macey, LLP, of Chicago (Stephen Novack, Donald A. Tarkington, and Andrew P. Shelby, of counsel), and Debevoise & Plimpton, LLP, of New York, New York (Edwin G. Schallert and Olga Kaplan, of counsel), for appellees. |
| Panel | JUSTICE CUNNINGHAM delivered the judgment of the court, with opinion. |
| | Presiding Justice Hoffman and Justice Rochford concurred in the judgment and opinion. |

**OPINION**

¶ 1      On this direct appeal, plaintiffs claim that the trial court erred when it dismissed plaintiffs' complaint with prejudice on the following grounds: (1) as being filed in an improper forum; (2) for failing to join an indispensable party, the New Jersey Insurance Commissioner (Commissioner); and (3) for failure to state a cause of action for breach of fiduciary duty because proximate cause was not properly alleged. For the following reasons, we affirm the ruling of the circuit court of Cook County.

¶ 2                            BACKGROUND

¶ 3      On March 26, 2001, plaintiffs Anna Howerton (Howerton), Floyd Burns, and Catherine Kunicki (a/k/a Bonovich) originally filed a class action complaint, individually and on behalf of a class, against Prudential Insurance Company of America (Prudential) and its board of directors. Plaintiffs are policyholders of life insurance policies issued by Prudential and claim to represent similarly situated policyholders as a class. Prudential is a stock life insurance company, incorporated with its principal place of business in New Jersey. At the time of the claimed damages, Prudential was a mutual life insurance company owned by its policyholders, including plaintiffs. Plaintiffs claim in their brief before this court that "each

such policyholder maintained an ownership portion of Prudential proportionate to his or her policy and the company's surplus." The policyholders elect the board of directors.

¶4      The case at bar stems from a settlement of a prior class action litigation in 1996 (the 1996 case).

¶5      In the 1996 case, Prudential allegedly sold fraudulent life insurance policies which had a "vanishing premium," as well as other alleged irregularities between January 1, 1982 and December 31, 1995. These allegedly fraudulent policies were sold through agents and brokers who received commission in compensation for the sales. The agents and brokers were under contract to return to Prudential all commissions received from the sale of any policy cancelled or otherwise terminated. Prudential entered into a settlement agreement with the New Jersey state insurance regulatory authority[1] and the members of the class who had purchased these policies. Plaintiffs in the case at bar were not part of the class in the settlement of the 1996 case because they had purchased their life insurance policies prior to 1982. The United States District Court for the District of New Jersey approved the settlement of the 1996 case, entitled *In re Prudential Insurance Co. of America Sales Practices Litigation*, 962 F. Supp. 450, 468 (D.N.J. 1997), *aff'd*, 148 F.3d 283 (3d Cir. 1998), *cert. denied sub nom. Krell v. Prudential Insurance Co. of America*, 525 U.S. 1114 (1999). The settlement resulted in Prudential paying fines and providing relief to its class members. *Prudential*, 962 F. Supp. at 473, 488-92. The settlement also included an alternative dispute resolution (ADR) procedure for policyholders who claim improper sales practices by Prudential that the New Jersey court described as a "fair and swift alternative to litigation." *Id.* at 488. The ADR procedure allowed those claiming injuries a forum to resolve their claims outside of court, and Prudential covered the cost of the program, including representation fees.[2] *Id.* The settlement also required Prudential to offer "Basic Claim Relief" to members of the class who either "[did] not feel misled or [did] not desire to participate in the ADR process." *Id.* at 541.

¶6      In 1996, around the time of the settlement,[3] Prudential considered attempting to recapture the "commissions associated with premiums that were returned or reduced in the ADR process." Prudential's management was concerned that a recapture campaign would hinder its agents' cooperation in the ADR process, which would in turn hinder Prudential's goal of facilitating policyholder remediation. Thus, Prudential chose not to pursue a recapture program.

¶7      On September 14, 2000, Howerton wrote a letter to Prudential demanding that Prudential recapture the commissions received by its agents for those policies that were returned or reduced in the settlement process.

---

[1]And various other states' insurance regulatory authorities.

[2]Policyholders had the option to retain their own counsel. *Prudential*, 962 F. Supp. at 488.

[3]The record is unclear regarding whether this happened before or after the settlement was agreed upon in October of 1996.

¶ 8     On December 15, 2000, after successfully gaining passage of a New Jersey state law allowing demutualization, Prudential's board unanimously voted to adopt a plan for demutualization. Under the terms of the plan, Prudential would distribute common stock, cash, or policy credits to eligible policyholders to convert Prudential from a mutual insurance company to a stock insurance company which would be owned by its shareholders.

¶ 9     On January 8, 2001, Prudential responded to Howerton's demand letter, informing Howerton that it planned to form a committee to "investigate" the commissions recapture and that the process may take "several months." Prudential formed a "special committee," and with the help of an outside law firm, conducted a year-long investigation into the matter.

¶ 10    On March 14, 2001, Prudential filed its demutualization plan with the New Jersey Department of Insurance. The plan required approval by the Commissioner (N.J. Stat. Ann. § 7:17C-4 (West 2000)), as well as a two-thirds approval by Prudential's qualified policyholders (N.J. Stat. Ann. § 17:17C-5 (West 2000)).

¶ 11    On March 26, 2001, plaintiffs filed a class action lawsuit in the circuit court of Cook County against Prudential asserting four counts: (1) that the demutualization plan was an anticipatory breach of Prudential's contracts with all of its policyholders; (2) that defendants breached their duty of good faith and fair dealing, and breached their fiduciary duty in adopting the plan; (3) asking the court to declare that the plan would violate the New Jersey Constitution by impairing the policyholders' contracts; and (4) seeking a declaratory judgment that the unearned commissions be deemed an asset of the company and distributed as part of any demutualization plan to the class members as surplus.

¶ 12    On May 30, 2001, defendants filed a combined motion to dismiss the class action lawsuit under section 2-615 of the Illinois Code of Civil Procedure (Code) (735 ILCS 5/2-615 (West 2000)), and section 2-619(a)(1) of the Code (735 ILCS 5/2-619(a)(1) (West 2000)). Prudential argued that: (1) the complaint should be dismissed under section 2-619 of the Code because the issue was not yet ripe and plaintiffs had not exhausted their administrative remedies given that no vote by the policyholders had yet taken place; (2) the doctrine of *forum non conveniens* supported New Jersey being the appropriate forum; and (3) the Commissioner was a necessary party and was not named in the suit. Prudential also sought to dismiss the complaint under section 2-615 of the Code on the grounds that the complaint did not state a cause of action.

¶ 13    On July 17 and 18, 2001, the Commissioner held a two-day public hearing regarding Prudential's demutualization plan. During the hearing, plaintiffs' counsel stated that:

    "This has to do with what I think is a serious undervaluation of the surplus of the Company and that undervaluation is derived from what appears to be a failure to–the failure of the Company to reimburse itself or collect, honoring commissions with respect to vanishing premium policies which were determined to be fraudulently sold."

¶ 14    On October 15, 2001, the demutualization plan was approved by the Commissioner. Within his report, the Commissioner stated that "the Plan allocates 100% of the value of [Prudential] to eligible policyholders," and that eligible policyholders would receive "full and proper consideration" for their "aggregate membership interests and corresponding values." He further stated that the plan would not have any adverse effect on any of Prudential's

"guarantees and obligations to policyholders under their policies."

¶ 15    On December 5, 2001, the special committee concluded its investigation by issuing a unanimous recommendation that "the Board reject *** Howerton's demand to take 'immediate steps' " to "recover certain commissions." It reasoned that Prudential's board, when it decided not to pursue the recapture of commissions in 1996, "acted with diligence and good faith, and in what it reasonably perceived to be in the best interests of [Prudential]." The special committee stated that "it would be inappropriate and unwise to attempt to reverse [the 1996 decision] many years after the fact." The special committee also found the costs of a recapture program would outweigh its benefits, listing many reasons for its conclusion: the length of time between fraudulent sales and the present; its previous announcement that it would not pursue recapture; the large number of agents and relatively small amounts of money at issue; the high legal costs associated with any recovery; the morale and public relations factors; and management costs.

¶ 16    On December 12, 2001, the board of directors adopted the recommendations of the special committee and rejected Howerton's demand to recapture the commissions.

¶ 17    On December 18, 2001, Prudential completed demutualization and became a stock life insurance company.

¶ 18    On March 22, 2002, Prudential sent a letter to Howerton explaining that it was declining to take action to recover commissions from its agents and brokers over the fraudulent insurance policies.

¶ 19    On June 5, 2002, plaintiffs filed an amended class action complaint. Again, Prudential filed a combined motion to dismiss under sections 2-615 and 2-619(a)(1) of the Code. On October 22, 2002, plaintiffs filed the second amended complaint. In response, Prudential filed a combined motion to dismiss under sections 2-615 and 2-619(a)(1) of the Code.

¶ 20    On June 19, 2003, plaintiffs filed a third amended complaint which is the subject of this appeal. It did not contain the claim of anticipatory breach of contract or the claim of violation of the New Jersey Constitution, which had been raised in the original complaint. The claims from the original complaint which are retained in the third amended complaint are: that Prudential breached its fiduciary duty to plaintiffs; and that Prudential owes plaintiffs the amount of money not recaptured as special damages. The instant complaint asserted that special damages were owed by Prudential to plaintiffs and the class because Prudential had been "able to maintain itself on the surplus and capital acquired by the sale of its stock, so that any recovery from [Prudential]" would rightfully "[belong to plaintiffs] and Class Plaintiffs as additional surplus that should have been included in the surplus of Prudential had it been accounted for." The complaint further asserted that plaintiffs did not pursue recapturing the money due to them because the board had made the "pre-determination to demutualize Prudential for their own personal gain." It also asserted that the board was concerned that pursuing recapture would cause the agents and brokers to blow the whistle regarding the board's part in the fraudulent sales practices. As a result, plaintiffs claim that the board breached its fiduciary duty to plaintiffs and the class and, therefore, owes them the amount not recaptured.

¶ 21    On July 17, 2003, defendants filed their combined motion to dismiss the third amended

complaint under section 2-619.1 of the Code (735 ILCS 5/2-619.1 (West 2000)), arguing that: (1) New Jersey is the proper forum under the doctrine of *forum non conveniens*; (2) the complaint was a direct challenge to the Commissioner's ruling, which could only be filed in New Jersey; (3) the complaint failed to state a cause of action for breach of fiduciary duty; (4) the complaint failed to state that the board's breach of fiduciary duty was the proximate cause of plaintiffs' injuries; (5) the Commissioner's ruling is protected by the business judgment rule; and (6) the claim could only be brought as a derivative action. The motion contained a copy of the Commissioner's approval order and transcripts from the Commissioner's hearing regarding Prudential's demutualization.

¶ 22    On December 20, 2010, the trial court issued a memorandum opinion and order which dismissed the third amend complaint, with prejudice. The court dismissed the complaint under section 2-619 of the Code because it found that the complaint was an indirect attack on the Commissioner's decision approving the demutualization, and therefore the complaint can only be filed in New Jersey. The court also dismissed the complaint under section 2-615 of the Code because it found that: (1) the Commissioner was an indispensable party and was not joined in the complaint; (2) the complaint was not personal to the shareholders but derivative to the company, and thus must be brought as a derivative action; and (3) the complaint did not adequately allege that the breach of fiduciary duty was the proximate cause of plaintiffs' injuries. For these reasons, the trial court dismissed the case, with prejudice.

¶ 23    On January 12, 2011, plaintiffs filed a timely notice of appeal.

¶ 24                                ANALYSIS

¶ 25    Plaintiffs filed a timely notice of appeal pursuant to Illinois Supreme Court Rule 303(a) (eff. June 4, 2008). Therefore, we have jurisdiction to consider this appeal. The granting of a section 2-615 or section 2-619 motion to dismiss will be reviewed *de novo* by the reviewing court. *Kedzie & 103rd Currency Exchange, Inc. v. Hodge*, 156 Ill. 2d 112, 116 (1993). *De novo* consideration means we perform the same analysis that a trial court would perform. *Khan v. BDO Seidman, LLP*, 408 Ill. App. 3d 564, 578 (2011). When reviewing a motion to dismiss, we accept all well-pleaded facts as true. *American Health Care Providers, Inc. v. County of Cook*, 265 Ill. App. 3d 919, 922 (1994). We will view the facts in the light most favorable to the plaintiff. *Summers v. Village of Durand*, 267 Ill. App. 3d 767, 769 (1994). Further, we may consider all facts presented in the pleadings, affidavits, and depositions contained in the record. *Arriola v. Time Insurance Co.*, 296 Ill. App. 3d 303, 306 (1998).

¶ 26    We first discuss plaintiffs' arguments that the trial court erred in dismissing their third amended complaint for filing the complaint in an improper forum, and for failing to join an indispensable party, the Commissioner. Resolution of these issues directly hinges upon whether the third amended complaint challenged the Commissioner's order approving Prudential's demutualization plan, or whether it merely claims damages for an event that occurred before the Commissioner approved the demutualization plan.

¶ 27    The trial court ruled that the third amended complaint was actually an attack on the Commissioner's order approving Prudential's demutualization plan. Accordingly, the trial

court dismissed the third amended complaint finding that New Jersey courts have exclusive jurisdiction to consider challenges to a New Jersey administrative agency decision. See N.J. Stat. Ann. § 17:17C-4(h) (West 2000); *State v. Ferrier*, 682 A.2d 1227, 1228 (N.J. Super. Ct. App. Div. 1996). Furthermore, the trial court dismissed the complaint because it found that the Commissioner was an indispensable party.

¶ 28    Plaintiffs argue that their complaint does not challenge the Commissioner's order approving demutualization. Rather, plaintiffs claim that their complaint alleges a breach of fiduciary duty by the board of a currently "nonexistent company." Plaintiffs claim that the Commissioner made no ruling on a cause of action regarding a breach of fiduciary duty and never addressed the issue of the collection of commissions. Additionally, plaintiffs assert that the Commissioner did not have the authority to adjudicate a dispute involving commissions recapture.

¶ 29    Defendants, on the other hand, argue that the Commissioner's order approving demutualization was in effect a ruling on the collection of commissions. Defendants point to the record that shows that plaintiffs' attorney testified regarding the issue of commissions recapture at the July 17 and 18, 2001 public hearings concerning demutualization. The attorney stated that he thought the plan was "a serious undervaluation of the surplus of the Company and that undervaluation is derived from *** the failure of the Company to reimburse itself or collect, honoring commissions with respect to vanishing premium policies which were determined to be fraudulently sold." Furthermore, plaintiffs point to the Commissioner's order, which states that eligible policyholders would receive "full and proper consideration" for their "aggregate membership interests and corresponding values." The Commissioner's order concluded that the plan allocated to eligible policyholders "100% of the value of [Prudential]," and further found that it was "full and proper consideration."

¶ 30    Although we accept all well-pleaded facts as true and view those facts in the light most favorable to plaintiffs, we conclude that the third amended complaint is a challenge to the Commissioner's approval of the demutualization plan. The Commissioner heard plaintiffs' arguments concerning Prudential's decision to refrain from recapturing commissions related to fraudulent policies. The Commissioner then indicated multiple times that the policyholders were receiving full and fair value from the demutualization plan. Plaintiffs conclude that this action by the Commissioner was a determination that policyholders were not entitled to the value of the uncollected commissions. Plaintiffs claim that their damages are based on being "deprived of the full value of their ownership interest in [Prudential] at the time of the demutualization and the calculation of the resulting distributions to policyholders." Thus, plaintiffs argue that the consideration awarded them by the Commissioner when he approved Prudential's demutualization plan was not adequate. This is, in essence, a challenge to the Commissioner's order.

¶ 31    We agree with Prudential that *Wright v. Prudential Insurance Co. of America*, 285 F. Supp. 2d 515 (D.N.J. 2003), provides insight into this issue. Although *Wright* is not binding authority, we find it persuasive. *Wright* concerned the same settlement and the same demutualization plan as the case at bar. The defendant was also Prudential, and the plaintiffs represented Prudential's policyholders as a class. After the Commissioner had approved the demutualization plan, plaintiffs brought a lawsuit in New Jersey claiming Prudential violated

the settlement agreement. *Wright*, 285 F. Supp. 2d at 518-20. According to plaintiffs in that case, Prudential agreed that it would not shift "[c]osts and [e]xpenses" to plaintiffs, either by paying legal expenses or otherwise reducing its surplus. *Id.* at 519-20. Plaintiffs claimed that when the cost and consideration of demutualization were calculated, policyholders paid the costs of the lawsuit. *Id.* The District Court in *Wright* dismissed the claim reasoning that although the claim was framed as a breach of contract, it was actually a challenge to the Commissioner's demutualization decision and could only be brought in the New Jersey Appellate Court. *Id.* at 520. The District Court stated "when [p]laintiffs challenge conduct that is mandated by a Plan, or omissions permitted by a Plan, they actually challenge that Plan itself." *Id.* The court stated that it would "treat [the plaintiffs'] claim as what it actually *is*, as opposed to what the [p]laintiffs *call* it." (Emphasis in original.) *Id.* at 521.

¶ 32    The case at bar is very similar to *Wright*. Both cases involve disputes over conduct by Prudential surrounding the same issues. Specifically, both sets of plaintiffs claim that the settlement agreement undervalued the consideration upon demutualization of the company. Although plaintiffs in the instant case claim their complaint seeks damages for events that occurred before Prudential demutualized, we analyze plaintiffs' claim on the basis of what it actually is, as opposed to what plaintiffs have labeled it. *Id.* The core of plaintiffs' claim is the alleged damages due to undervalued consideration upon demutualization. Thus, the third amended complaint is actually a challenge to the Commissioner's order which held that policyholders received full demutualization consideration.

¶ 33    In matters relating to a company's breach of fiduciary duties, Illinois courts apply the substantive law of the state of incorporation of that company. *Libco Corp. v. Roland*, 99 Ill. App. 3d 1140, 1144 (1981). Here, Prudential is incorporated in New Jersey, so we apply New Jersey law. New Jersey law gives the Commissioner the power to approve or disapprove of a mutual insurance company's plan of demutualization. N.J. Stat. Ann. § 17:17C-4(e), (f) (West 2000). The New Jersey Appellate Court has exclusive jurisdiction for reviewing agency decisions. N.J. Stat. Ann. § 17:17C-4(h) (West 2000); *State v. Ferrier*, 682 A.2d 1227, 1228 (N.J. Super. Ct. App. Div. 1996). Thus, according to New Jersey law, plaintiffs can appeal any challenge to the Commissioner's order approving demutualization to the New Jersey appellate court. Here, plaintiffs' third amended complaint is actually a challenge to the Commissioner's order approving demutualization. Therefore, a challenge to a decision of an administrative agency of the state of New Jersey should be appealed to the New Jersey appellate court. Accordingly, the circuit court of Cook County was correct in finding that it was an improper forum for the case. Consequently, the circuit court of Cook County properly dismissed this action pursuant to section 2-619 of the Code.

¶ 34    We next discuss plaintiffs' argument that the Commissioner was not an indispensable party. Illinois courts have characterized dismissal for failure to join an indispensable party as "procedural." *Kostakos v. KSN Joint Venture No. 1*, 142 Ill. App. 3d 533, 535 (1986); *Zurich Insurance Co. v. Baxter International, Inc.*, 275 Ill. App. 3d 30, 36 (1995) (The necessary party issue is a procedural matter defining the scope, not the substance, of the litigation.). "In conflict of laws situations, the procedural law of the forum State is applied and the substantive law of the other State is applied." *Boersma v. Amoco Oil Co.*, 276 Ill. App. 3d 638, 645 (1995).

¶ 35    "A person is a necessary and indispensable party[4] to the litigation when the person has an interest in the subject matter of the suit which may be materially affected by a judgment entered in the person's absence." *People ex rel. Sheppard v. Money*, 124 Ill. 2d 265, 281 (1988). "The relevant inquiry is not whether the court's judgment has in fact materially affected the absent individual's interests in the subject matter in controversy. Instead, it is whether the absent person might claim a substantial and present interest which determines that the person is a necessary and indispensable party." *Id.* When an indispensable party is absent, the court should not proceed to a decision on the merits. *Feen v. Ray*, 109 Ill. 2d 339, 348 (1985).

¶ 36    Plaintiffs claim in their brief before this court that they "are not disputing the Commissioner's [order], nor are they asking for judicial review of the Commissioner's [order]. Therefore no relief is sought against the Commissioner and [he] is not an indispensable party." Plaintiffs do not address the simple fact that if a complaint challenges the Commissioner's order, then the Commissioner is an indispensable party. As we have already determined, the plaintiffs' complaint *does* challenge the Commissioner's order.

¶ 37    Plaintiffs rely on a single citation, *Rieff v. Evans*, 630 N.W.2d 278 (Iowa 2001), to support their argument that the Commissioner is not an indispensable party. In *Rieff*, the Iowa Supreme Court found that a class of policyholders' cause of action alleged sufficient facts to survive dismissal. *Rieff*, 630 N.W.2d at 296. The policyholders sued the board of directors of an insurance company for *de facto* demutualization and breach of fiduciary duty. *Id.* at 282. The court did not discuss the issue of whether the Iowa Insurance Commissioner was an indispensable party. Plaintiffs in this case argue that the ruling shows that Iowa does not require its insurance commissioner to be joined in actions against insurance companies for demutualization. Plaintiffs further argue that there are no Illinois cases on point. Plaintiffs then attempt to argue that because Iowa law is similar to Illinois law, *Rieff's* reasoning should be applied to this case. Plaintiffs cite no authority for this sweeping conclusion.

¶ 38    Furthermore, *Rieff* is factually distinguishable from this case. In *Rieff*, the Iowa Insurance Commissioner did not issue an order approving demutualization. Rather, the Iowa Insurance Commissioner's office conducted an audit that concluded that no structure changing events had occurred. *Id.* at 290. Plaintiffs seem to be inferring that the Iowa report is equivalent to the Commissioner's order in the case at bar, and therefore we should follow the holding in *Rieff* and conclude that the Commissioner is not an indispensable party. *Rieff* has no applicability to the case before us. We decline plaintiffs' invitation to apply *Rieff* to the case at bar.

¶ 39    We conclude that the Commissioner has a substantial interest in the subject matter of the instant lawsuit which may be materially affected by a judgment entered in his absence. A holding for plaintiffs in this case would call into question the Commissioner's order regarding the consideration received by the Prudential policyholders when the company underwent demutualization. Such a holding would have a direct impact on the

---

[4]Illinois courts frequently use the terms "indispensable party" and "necessary party" interchangeably. *Allied American Insurance Co. v. Ayala,* 247 Ill. App. 3d 538, 543 (1993).

-9-

Commissioner's authority under the laws of New Jersey.

¶ 40    We hold that the trial court did not err in finding that the Commissioner is an indispensable party to the case at bar. Furthermore, we hold that the trial court did not err in dismissing the third amended complaint pursuant to section 2-619 of the Code because the complaint was a challenge to the Commissioner's order. It is well settled that the New Jersey appellate court has exclusive jurisdiction for reviewing the Commissioner's order.

¶ 41    We note that plaintiffs also argue that the trial court erred in dismissing their third amended complaint for failure to state a cause of action for breach of fiduciary duty. However, because we have already determined that the trial court properly dismissed the third amended complaint on other grounds, we will not address this argument.

¶ 42    For the foregoing reasons, we affirm the ruling of the circuit court of Cook County.

¶ 43    Affirmed.