766 A.2d 285

DOROTHEA M. MUTSCHLER, RICHARD WILDE AND BARBARA WILDE, PLAINTIFFS–RESPONDENTS, v. NEW JERSEY DEPARTMENT OF ENVIRONMENTAL PROTECTION, RAYMOND E. CANTOR AND KEVIN BRODERICK, DEFENDANTS–APPELLANTS, AND BOROUGH OF WEST CAPE MAY PLANNING BOARD, DEFENDANT–RESPONDENT.

Superior Court of New Jersey
Appellate Division

Argued October 31, 2000—Decided January 18, 2001.

2

Before Judges SKILLMAN, CONLEY and WECKER.

*Brian Weeks*, Deputy Attorney General, argued the cause for appellants (*John J. Farmer, Jr.*, Attorney General, attorney; *Mary C. Jacobson*, Assistant Attorney General, of counsel; *Mr. Weeks*, on the brief).

*Richard M. Hluchan* argued the cause for respondents Dorothea M. Mutschler, Richard Wilde and Barbara Wilde (*Ballard Spahr Andrews & Ingersoll*, attorneys; *Mr. Hluchan*, of counsel; *Jeffrey S. Beenstock*, on the brief).

*Robert L. Taylor* argued the cause for respondent Borough of West Cape May Planning Board.

The opinion of the court was delivered by

SKILLMAN, P.J.A.D.

The Coastal Area Facility Review Act (CAFRA), *N.J.S.A.* 13:19–1 to 21, requires any party who plans to construct a "public development" within the coastal area to obtain a permit from the Department of Environmental Protection (DEP). *N.J.S.A.* 13:19–5. In 1995, the Borough of West Cape May obtained a CAFRA permit that authorized the municipality to construct an additional wastewater pump station and extend its sewer lines. The permit contained various conditions that West Cape May was required to satisfy before starting construction.

This appeal turns on the interpretation of condition seven of the permit, which provides in relevant part:

> [W]ritten authorization [must be obtained] from the [DEP], prior to the installation of any sewer "laterals or tie-ins" to undeveloped properties within: a) wetlands, b) the 150′ transition (buffer) areas from these wetlands, or c) wet soils or high permeability moist soils (below elevation 10′) as shown on the referenced "Land Capability Map". Prior to construction, the Borough must adopt a Land Use Regulation Program approved municipal resolution clearly listing all these properties.

To comply with this condition, West Cape May's governing body adopted a resolution that listed the undeveloped properties in the proposed new sewer service area that West Cape May considered to be within wetlands, transition buffer areas or wet or high permeability moist soils below ten feet in elevation. Plaintiff

Dorothea Mutschler's property in the new sewer service area was omitted from this list.

Plaintiffs Richard and Barbara Wilde subsequently contracted to purchase this property from Mutschler. They propose to construct a twenty-one unit residential development on the property. To obtain authorization for their development, the Wildes applied to defendant Borough of West Cape May Planning Board (Planning Board) for subdivision approval.

Shortly before the application was to be heard, defendant Kevin Broderick, the Chief of the DEP's Land Use Regulation Program, sent a letter to the Planning Board Chairperson, which stated that "prior to the start of construction of any sewerage generating development on [the property], approval must be received from the [DEP's] Land Use Regulation Program." Based on this letter, the Planning Board deferred consideration of the Wildes' application pending the DEP's approval.

After further review of the matter, Broderick sent a letter to Mr. Wilde, dated June 17, 1999, which reaffirmed that the Wildes must obtain authorization from the DEP, in accordance with condition seven of the sewer construction permit, before their proposed residential development can be connected to the new sewer line:

> A review of the site plan [for the Wilde's proposed residential development] ... in concert with a review of the "Soil Survey of Cape May County", reveals construction is proposed in either a wet or high permeability moist soil. Accordingly, written approval is necessary from the [DEP] before your development can tie into the Stevens Street sewer line.

Defendant Raymond E. Cantor, an Assistant Commissioner of the DEP, subsequently sent a letter to the Wildes' attorney, dated December 23, 1999, which affirmed Section Chief Broderick's ruling:

> Pursuant to [condition seven], it was incumbent upon [West Cape May] to accurately investigate all potentially sewerable properties that could be serviced by the Stevens Street line and then pass an ordinance that restricted development from those properties unless prior approval had been received from the [DEP].
>
> Subsequent to receiving the CAFRA permit, .. West Cape May did pass an ordinance that restricted development from various blocks and lots unless prior

approval was received from the [DEP]. However, [West Cape May] apparently did not analyze each property on an individual basis, instead relying on generalized maps such as the 1986 Freshwater Wetland Quarter Quads along with the USGS photo-quads. It does not appear from our review of the file, that any land analysis contained a review of the Cape May County Soil Survey. The unfortunate result of this omission was that [West Cape May] . . . missed that [the Mutschler property was] in fact not developed, contained wet soils or high permeability moist soils, contained either wetlands or wetlands buffers and were below elevation 10'.

Since it was [West Cape May's] responsibility to provide the Program with the listing of properties that contained any of the above criteria and [West Cape May] did not provide an accurate picture of existing sensitive conditions, the [DEP] is not bound by the ordinance because it is based on incomplete information.

Plaintiffs filed this action in the Law Division, seeking a declaratory judgment that "no NJDEP approval is necessary pursuant to CAFRA in order for the Mutschler property to tie into the sewer line," as well as other relief. After defendants answered, plaintiffs moved for a partial summary judgment declaring that "NJDEP approval is not required for development on [the Mutschler property] to connect to the sanitary sewer system" and enjoining the DEP from "interfer[ing] with Plaintiffs' application for subdivision approval." Defendants filed a cross-motion to dismiss plaintiffs' complaint. One of the grounds of defendants' motion was that the Law Division lacked jurisdiction because this court has exclusive jurisdiction to review any action by a state administrative agency.

The trial court declined to consider defendants' motion to dismiss because of procedural defects. The court subsequently issued a brief written decision which concluded that even though West Cape May's failure to include the Mutschler property on the list of properties that require DEP approval to connect into the expanded sewer system "may have been an error," plaintiffs were entitled to rely upon that omission. Accordingly, the court entered summary judgment declaring that plaintiffs are not required to obtain the DEP's approval to connect their proposed residential development into the sewer system. The court also enjoined the DEP, Cantor, and Broderick from interfering with plaintiffs' application for subdivision approval.

We granted the DEP's motion for leave to appeal and now reverse. We conclude that the Law Division lacked jurisdiction to

review the DEP's declaratory ruling that plaintiffs are required by condition seven of the sewer construction permit to obtain the DEP's authorization to connect into the West Cape May sewer system, and that the case should have been transferred to this court. We also conclude that the DEP's declaratory ruling is ripe for appellate review, and therefore treat the case as if it had been transferred to this court. We further conclude that, pursuant to condition seven, the DEP correctly ruled that plaintiffs must obtain its approval to connect into the West Cape May sewer system.

I

The Appellate Division has been vested with exclusive jurisdiction to review any action or inaction of a state administrative agency. *Pascucci v. Vagott*, 71 *N.J.* 40, 51–54, 362 *A.2d* 566 (1976); *Equitable Life Mortgage & Realty Investors v. New Jersey Div. of Taxation*, 151 *N.J.Super.* 232, 237–38, 376 *A.2d* 966 (App.Div.), *certif. denied*, 75 *N.J.* 535, 384 *A.2d* 514 (1977). The Appellate Division's exclusive jurisdiction does not turn on the theory of the challenging party's claim or the nature of the relief sought. *Central R.R. Co. v. Neeld*, 26 *N.J.* 172, 184–85, 139 *A.2d* 110, *cert. denied*, 357 *U.S.* 928, 78 *S.Ct.* 1373, 2 *L.Ed.2d* 1371 (1958). Thus, this court's exclusive jurisdiction extends to claims of state agency inaction, *Hospital Ctr. at Orange v. Guhl*, 331 *N.J.Super.* 322, 329–30, 751 *A.2d* 1077 (App.Div.2000), and to claims that are essentially declaratory in nature. *Equitable Life Mortgage & Realty Investors v. New Jersey Div. of Taxation*, *supra*, 151 *N.J.Super.* at 238, 376 *A.2d* 966. It also extends to claims that are joined with claims within the jurisdiction of another court or division of this court. *Pascucci v. Vagott*, *supra*, 71 *N.J.* at 52–54, 362 *A.2d* 566.[1]

---

[1] In the unusual situation where it is not feasible or appropriate for the Appellate Division to hear all claims asserted in an appeal from state administrative agency action, we may transfer such claims to the Law or Chancery

■ If a challenge to the action or inaction of a state administrative agency is brought in a trial court, that court has the responsibility to transfer the matter to this court on the motion of a party or "on its own initiative." *R.* 1:13–4(a). If a trial court fails to transfer a challenge to state agency action to this court and instead decides the merits, we may exercise our original jurisdiction on appeal from the judgment and review the underlying agency action as if the challenging party had appealed directly to this court. *See Degnan v. Nordmark & Hood Presentations, Inc.,* 177 *N.J.Super.* 186, 191, 425 *A.*2d 1091 (App.Div.), *appeal dismissed,* 87 *N.J.* 427, 434 *A.*2d 1098 (1981). In that event, we review only the agency's action, not the trial court's determination of a matter over which it had no jurisdiction.

■ The DEP's action in this case consisted of an interpretation of condition seven of the CAFRA permit that the DEP had issued to West Cape May for an extension of its sewer system. The DEP determined that, pursuant to this condition, plaintiffs must obtain authorization from the DEP to connect into the system even though West Cape May had failed to include the Mutschler property on the list of properties subject to this requirement. This was a declaratory ruling concerning the meaning of condition seven of the permit that the DEP issued to West Cape May, which is a state administrative agency action that may be reviewed only by this court. *See Degnan v. Nordmark & Hood Presentations, Inc., supra,* 177 *N.J.Super.* at 191–92, 425 *A.*2d 1091; *Princeton First Aid & Rescue Squad, Inc. v. Division on Civil Rights,* 124 *N.J.Super.* 150, 152–53, 305 *A.*2d 91 (App.Div.), *certif. denied,* 63 *N.J.* 555, 310 *A.*2d 470 (1973). Therefore, the trial court erred in undertaking to review the DEP's interpretation of condition seven of the sewer construction permit issued to West Cape May.

■ Although the trial court should have transferred plaintiffs' challenge to the DEP's interpretation of condition seven to this

Division. *See Maisonet v. New Jersey Dep't of Human Servs.,* 140 *N.J.* 214, 226–28, 657 *A.*2d 1209 (1995).

court, we conclude that plaintiffs' complaint should be treated as an appeal from the DEP's declaratory ruling, and that that ruling is ripe for appellate review. The Deputy Attorney General representing the DEP advised us at oral argument that Assistant Commissioner Cantor's December 23, 1999 letter constituted the agency's final determination concerning the meaning of condition seven, and that the only administrative remedy now available to plaintiffs would be to file an application with the DEP for approval of the connection of their proposed residential development into the West Cape May sewer system. The availability of that remedy, which assumes the correctness of the DEP's interpretation of condition seven, does not make the DEP's declaratory ruling interlocutory in nature. Moreover, even if we considered that ruling to be interlocutory, we would grant leave to appeal in the interest of justice. *See R.* 2:2-4. Accordingly, we proceed to the merits of plaintiffs' argument.

II

Before certain types of developments in coastal lands covered by CAFRA may be constructed, a permit must be obtained from the DEP. *N.J.S.A.* 13:19-5. CAFRA exempts residential developments with fewer than twenty-five units from this permit requirement. *N.J.S.A.* 13:19-5e(1). Thus, the Wildes would not be required to obtain a CAFRA permit to construct their proposed twenty-one unit residential development.

However, a CAFRA permit is required to construct a "public development," *N.J.S.A.* 13:19-5b(4), which includes wastewater treatment plants and sewer pipelines. *N.J.S.A.* 13:19-3. Consequently, West Cape May was required to obtain a CAFRA permit to extend its sewer system, and condition seven of that permit requires any owner of property that contains wetlands, wetlands transition buffer areas, or wet or high permeability moist soils below ten feet in elevation, to obtain written authorization from the DEP before connecting into that system.

In *In re Cape May County Mun. Utils. Auth.*, 242 *N.J.Super.* 509, 577 *A.2d* 840 (App.Div.1990), this court held that the DEP may issue a CAFRA permit for an extension of a sewer system, conditioned upon the DEP approving any proposed new connection into the system, including a connection by a proposed new residential development containing fewer than twenty-five units. We concluded that such a condition is "authorized by [*N.J.S.A.* 13:19–11's] grant of authority to impose conditions reasonably necessary to 'promote the public health, safety and welfare ... and to preserve, protect and enhance the natural environment.' " *Id.* at 516, 577 *A.2d* 840. Therefore, condition seven of the permit issued to West Cape May is clearly valid.

Plaintiffs apparently concede that at least part of their property contains wet or high permeability moist soils below ten feet in elevation. Thus, under the plain language of the first sentence of condition seven, plaintiffs would be required to obtain "written authorization" from the DEP to connect into the West Cape May sewer system. However, plaintiffs contend that they are exempt from this requirement because West Cape May's governing body adopted a resolution purportedly listing all properties subject to condition seven, which omitted their property. Plaintiffs characterize the requirement that West Cape May "adopt a ... municipal resolution clearly listing all ... properties" subject to condition seven as a "delegation [of] responsibility for identifying those properties requiring [DEP] approval," and contend that West Cape May's failure to include their property on the list is binding upon the DEP.

However, the Legislature delegated sole administrative authority "to achieve CAFRA's highly important purpose of protecting our fragile coastal area from adverse environmental impact," *State Dept. of Envtl. Prot. v. Stavola*, 103 *N.J.* 425, 433, 511 *A.2d* 622 (1986), to the DEP. The Legislature did not delegate any responsibility for the administration of the CAFRA program to municipal governments. Moreover, "[t]he general rule is that a power or duty delegated by statute to an administrative

agency cannot be subdelegated in the absence of any indication that the Legislature so intends." *Mercer Council No. 4, N.J. Civil Serv. Ass'n v. Alloway,* 119 *N.J.Super.* 94, 99, 290 *A.2d* 300 (App.Div.), *aff'd o.b.,* 61 *N.J.* 516, 296 *A.2d* 305 (1972). CAFRA contains no such legislative authorization for the DEP to subdelegate its regulatory authority to a municipality. In fact, CAFRA reflects a legislative determination that "municipal land use control [is] inadequate to assure orderly and environmentally-sound development" in the coastal area. *In re Egg Harbor Assocs.,* 94 *N.J.* 358, 368, 464 *A.2d* 1115 (1983). Furthermore, the rules and regulations adopted by the DEP to implement CAFRA, *N.J.A.C.* 7:7–1.1 to 9.9, do not purport to delegate any responsibility for the enforcement of this legislation to municipal governments. Therefore, we reject plaintiffs' argument that the second sentence of condition seven of the permit issued to West Cape May should be construed as a delegation of authority to the municipality to determine which property owners must obtain DEP approval before connecting into the new section of its sewer system.

Instead, we conclude that this provision was simply a directive to West Cape May to identify those properties that must obtain the DEP's approval before connecting into the sewer system, without binding the DEP to the municipality's determination. We note that the second sentence of condition seven does not state that notice or an opportunity to be heard must be given to the owner of any property that West Cape May proposes to put on the list, which suggests that the inclusion of a property on the list would not be binding on the property owner. Most significantly, condition seven does not state that an owner of property omitted from the list is exempt from obtaining DEP approval even if the property falls within the definition of environmentally sensitive land set forth in the first sentence. Therefore, the second sentence of condition seven should be viewed as simply an administrative provision, which requires the permittee to list properties it believes are required to obtain DEP approval to connect into the

system, without conferring any rights upon an owner of a property erroneously omitted from the list.

Moreover, if there were any doubt concerning the proper interpretation of condition seven, we would defer to the DEP's interpretation. Courts extend substantial deference to an agency's interpretation of its own regulations, *DiMaria v. Board of Trs. of Pub. Employees' Ret. Sys.*, 225 *N.J.Super.* 341, 351, 542 *A.*2d 498 (App.Div.), *certif. denied*, 113 *N.J.* 638, 552 *A.*2d 164 (1988), and an agency's interpretation of the terms of a permit it has issued should be accorded similar deference.

We also note that even if West Cape May's omission of plaintiffs' property from the list of properties required to obtain DEP approval to connect into the sewer system were considered an act of delegated governmental authority, the municipality's action would not be immune from correction if it were later shown to have been erroneous. "[A]dministrative agencies generally have the inherent power to reopen or to modify and rehear prior decisions." *In re Trantino,* 89 *N.J.* 347, 364, 446 *A.*2d 104 (1982). "This power to reappraise and modify a prior determination may be invoked ... to protect the public interest...." *Trap Rock Indus., Inc. v. Sagner,* 133 *N.J.Super.* 99, 109, 335 *A.*2d 574 (App.Div.1975), *aff'd* 69 *N.J.* 599, 355 *A.*2d 636 (1976). Consequently, even if the DEP itself had issued a list of properties required to obtain approval before connecting with the West Cape May sewer system, and erroneously omitted plaintiffs' property, the DEP would retain authority to correct the list, at least in the absence of a showing of justifiable reliance upon the omission, which plaintiffs did not undertake to establish.

We reject plaintiffs' suggestion that condition seven does not apply to their proposed development because the construction permit the DEP issued to West Cape May has expired. *N.J.A.C.* 7:7–1.5(b)(8) expressly provides that "conditions imposed by a permit shall remain in full force and effect so long as the development or any portion thereof is in existence...." Because the

extension of West Cape May's sewer system to which plaintiffs propose to connect their development is still "in existence," condition seven "remain[s] in full force and effect...."

Finally, we emphasize that our decision is limited to a determination that plaintiffs must obtain the DEP's approval before they may connect into the West Cape May sewer system. We express no opinion concerning the showing plaintiffs must make to obtain such approval. See *In re Cape May Mun. Utils. Auth., supra,* 242 *N.J.Super.* at 516–17, 577 *A.*2d 840.

Accordingly, we reverse the judgment of the Law Division, treat the appeal as an appeal from the DEP's declaratory ruling that plaintiffs must obtain the DEP's approval to connect with the West Cape May sewer system, and affirm that ruling.