Charles W. **WRIGHT** and Kelley B. Wright, Individually and on behalf of all others similarly situated, Plaintiffs,

v.

THE PRUDENTIAL INSURANCE COMPANY OF AMERICA, Prudential Insurance, and Prudential Financial, Inc., Defendants.

No. 02 CV 5742(DRD).

United States District Court, D. New Jersey.

Sept. 29, 2003.

Dianne M. Nast, Esq., Roda & Nast, P.C., Mancaster, PA, John R. Climaco, Esq., Climaco, Lefkowitz, Peca, Wilcox & Garofoli Co., L.P.A., Cleveland, OH, Edward W. Cochran, Esq., Cochran & Cochran, Shaker Heights, OH, Robert W. Bishop, Esq., Bishop & Associates, P.S.C., Louisville, KY, for Plaintiffs.

Charles M. Lizza, Esq., LeBoeuf, Lamb, Greene & MacRae, L.L.P., Newark, NJ, Of Counsel, Edward G. Schallert, Esq., Diane Hester, Esq., Judith Taft, Esq., Debevoise & Plimpton, New York, NY, for Defendants.

## OPINION

DEBEVOISE, Senior District Judge.

Plaintiffs, the insured and beneficiary on a policy issued by Prudential Life Insurance Company of America, have initiated this lawsuit against Prudential[1] on behalf of themselves and others similarly situated.[2] Plaintiffs claim that Prudential's plan of reorganization breached the terms of a settlement agreement the company reached in 1997 resolving a lawsuit unrelated to its reorganization. Prudential, moving to dismiss the Complaint, argues that the Court does not have jurisdiction to hear Plaintiffs' claim and that—even if it did—Plaintiffs fail to state a claim upon which relief can be granted. The court concludes that it lacks jurisdiction to decide Plaintiffs' claim. Even if it did not lack jurisdiction, however, the claim would fail on the merits.

### FACTUAL BACKGROUND

In February of 1995, Prudential policyholders and former agents filed lawsuits in federal and state courts around the country, alleging that Prudential had engaged in deceptive sales practices. The cases were consolidated, and, in October of 1996, resolved when the parties entered into an MDL Settlement ("Settlement Agreement").

### The Settlement Agreement

In the Settlement Agreement, Prudential agreed to make available to Plaintiffs

---

1. According to the Complaint, "Prudential Insurance Company of America" was the name of the defendant company prior to its demutualization, after which its name became "Prudential Insurance." "Prudential Financial, Inc." is Prudential Insurance's publicly traded holding company. All three companies are named as defendants in this action. For purposes of simplicity, this opinion will refer to all three of these companies collectively as "Prudential."

2. Plaintiffs originally filed suit in the District Court for the Eastern District of Texas, which that court held to be an improper forum; the case was transferred to this court on November 21, 2002. (DA 18–21).

two alternative types of relief: Alternative Dispute Resolution ("ADR") Relief and Basic Claim Relief. (DA 713). In addition, Prudential promised to pay for many of the costs and expenses associated with the lawsuit, including their own and Plaintiffs' attorneys' fees and the costs of administering the ADR process ("Costs & Expenses").[3] Prudential kept that promise and made the payments.

On March 17, 1997, the court approved the Settlement Agreement, concluding that it was "fair, reasonable, and adequate." *In re The Prudential Insurance Company of America Sales Practices Litigation*, 962 F.Supp. 450, 468 (D.N.J.1997).[4] In his Final Order and Judgment, Judge Wolin included a provision by which the court "retain[ed] exclusive jurisdiction as to all matters relating to administration, consummation, enforcement and interpretation of the Stipulation of Settlement and of this Final Order and Judgment, and for any other necessary purpose." *Id.* at 566. The Court of Appeals has twice affirmed the Court's authority to enforce the Settlement. *In re The Prudential Insurance Company of America Sales Practices Litigation*, 314 F.3d 99, 105 (3d Cir.2002); *In re Prudential Insurance Company of America Sales Practice Litigation*, 261 F.3d 355, 367–370 (3d Cir.2001) (both affirming that the court had the authority to enjoin lawsuits maintained on or behalf of class members).

### Prudential's Reorganization Plan

Several years after the Settlement Agreement was approved, Prudential publicly announced its intention to convert from a mutual life insurance company (one owned by policyholders) to a stock life insurance company (one owned by shareholders). (DA 122). On December 15, 2000, Prudential's Board of Directors unanimously approved and adopted a plan to effect that conversion ("Plan").

Under the terms of the Plan, each policyholder would surrender her membership interest in Prudential. In exchange, those policyholders deemed eligible[5] would receive consideration comprised of (1) a "fixed component" of eight shares in Prudential, and (2) a "variable component" of stock, cash or policy credits in an amount

---

**3.** For example, some of the relevant parts of the Settlement Agreement read

> Payment of the attorneys' fees and expenses to Plaintiffs' Lawyers will not reduce any funds or relief being made to Class Members under the proposed settlement. Class members will not be required to pay any portion of Plaintiffs' attorneys' fees. (As quoted in Complaint, DA 6)

> The following additional expenses incurred after the execution of this Stipulation will be paid by or on behalf of Defendants: publication, printing and mailing costs of the Class Notice, the Summary Notice, the Post–Settlement Notice and the Post–Settlement Summary Notice, the Final Settlement Notice; post-office box rental costs, telephone costs for establishing and using the 800 telephone numbers set forth in this Stipulation; any processing costs for requests for exclusion; fees and disbursements to the Claimant Group Administrator and any other third-party contractors or administrators; any processing costs for Election Forms; administration costs and expenses of the ADR Process not specified in this paragraph; and fees and disbursements to the Claimant Representative, the Representatives, the Independent Claim Evaluation Team and Appeals Committee members as provided for in the ADR Manual. In connection with the payment of the costs and expenses specified in the prior sentence, none of such payments shall directly or indirectly reduce, limit or modify the remedies provided in the ADR process or Basic Relief Claim. (DA 737–38).

**4.** The Court of Appeals later affirmed this approval. *In re Prudential Ins. Co. of America Sales Practices Litigation*, 148 F.3d 283 (3d Cir.1998).

**5.** According to the Plan, "an eligible policyholder is a person who was, or was deemed for purposes of the Plan to be, the owner of one or more eligible policies that were in force, or deemed to be in force, on December 15, 2000." (DA 137).

that Prudential would calculate based on estimates of the historical and projected future contributions of the policyholder's eligible policies to Prudential's surplus. (DA 132).

The complex actuarial formula Prudential used to calculate the variable component ("the Formula") required that Prudential add certain payments it had made over the years that were unrelated to the policies (for example, for Y2K preparation) back into the "surplus" before dividing that surplus among policyholders.[6] The Costs & Expenses were not among these payments.

The Plan acknowledged that commitments Prudential made under the Settlement Agreement would need to be taken into account in calculating the amount of demutualization consideration due to certain policyholders that had been parties to it.[7]

### State Agency Approval of the Reorganization Plan

N.J. STAT. ANN. Chapter 17C–4 ("Conversion Law") requires that a mutual insurer

(a) ... file with the commissioner an application for approval of, and permission to reorganize pursuant to, a plan of reorganization ...

(f) The commissioner shall approve the application and permit the reorganiza-

tion pursuant to the plan of reorganization if he finds, following a public hearing, that: (1) the application conforms to the requirements of this section; (2) the plan is fair and equitable to the policyholders of the mutual insurer; (3) the plan promotes the best interest of the mutual insurer and its policyholders; (4) the plan provides for the enhancement of the operations of the reorganized insurer; (5) the plan is not contrary to law; (6) the plan is not detrimental to the public; and (7) after giving effect to the reorganization, the reorganized insurer will have an amount of capital and surplus the commissioner deems to be reasonably necessary for its future solvency.

Pursuant to the Conversion Law, on March 14, 2001, Prudential filed its application for approval of the Plan with the Commissioner. Throughout May, 2001, Prudential mailed information to approximately 10 million policyholders that included, *inter alia,* the Plan, notice that the Commissioner would hold a public hearing about the Plan, and instructions for policyholders on how to vote to approve or disapprove the proposed demutualization.

At the public hearing, which was held on July 17 and 18, 2001, eight representatives of Prudential made a presentation about

---

**6.** As quoted in the Complaint, the Plan described this process in this way:

... "[T]here were specific 'corporate events' that were not allocated to any specific class of polices and were not reflected in the financial management of the business. To the extent that these 'corporate events' (such as preparation for Y2K and sales practices remediation and expenses) could be identified and their financial impact quantified, the taxes, investment returns or expenses were adjusted to remove the impact of these 'corporate events.'" (DA 11).

**7.** As the Commissioner of the New Jersey Department of Banking and Insurance ("the Commissioner") explained it,

Additional calculations are required for holders of eligible policies that were subject to, or issued as a result of ADR relief, and that were in force on December 15, 2000. As a result of a commitment made to these policyholders, the compensation for these policies will be calculated to allow them to receive the same overall financial result regardless of the form of ADR relief selected. In some cases, the compensation received may be greater than that attributed to the eligible in force policy.

(DA 188).

the Plan and twenty-one interested persons made oral comments; in addition, the Commissioner received 121 written comments from members of the public. (DA 126–27; DA 157). Some of those comments dealt with concerns regarding the interaction of the Plan and the Settlement Agreement.[8] Plaintiffs did not submit comments or participate in the hearing.

Policyholders approved the Plan by a large margin. On August 1, 2001, Prudential submitted a certification of the results of the policyholder vote. (DA 128).

On October 15, 2001, the Commissioner issued a lengthy opinion approving the Plan as "fair and equitable."[9] In the opinion, the Commissioner addressed each of the concerns that had been raised by commenters at the hearing and affirmed that none of them prevented the Plan from being worthy of approval. (DA 157–174). Among the concerns the Commissioner addressed were those relating to the interaction between the Plan and the Settlement Agreement. As with the other concerns, the Commissioner disposed of these. (DA 182).

Plaintiffs did not seek judicial review of the Commissioner's decision. Other policyholders, however, challenged the Commissioner's decision (on grounds other than those the Plaintiffs raise here[10]) to the New Jersey Superior Court, Appellate Division ("Appellate Division") as required by the subsection (h) of the Conversion Law. On July 27, 2003, the Appellate Division rejected the policyholders' contentions and affirmed the Commissioner's conclusion that the Plan was "fair and equitable." *In re Plan of Reorganization of The Prudential Insurance Company of America.* (DA 222–85).[11]

## DISCUSSION

Plaintiffs contend that the fact that Prudential had paid—and hence the company's surplus had been reduced by the amount of—the Costs & Expenses by the time policyholder demutualization consideration was calculated in effect meant that the policyholders ended up paying for the costs of the lawsuit that led up to the settlement.[12] This, Plaintiffs argue, was in direct violation of the Settlement Agree-

8. For example, "[a] number of persons specifically rais[ed] concerns regarding the status of their individual ADR claims under the ADR process ... Other ADR claimants, who previously settled their ADR claims and are now being given the opportunity to 'redo' by repurchasing a policy surrendered in ADR ... have complained that the premiums they are required to pay exceed the demutualization compensation they would receive." (DA 172).

9. Under the Conversion Law, " 'fair and equitable' means that any action undertaken pursuant to this act with respect to a plan of reorganization, provides for full and proper consideration of the aggregate membership interests and corresponding values of eligible policyholders, in no manner discriminates improperly among eligible policyholders and appropriately protects the interests of eligible policyholders before and subsequent to the reorganization." N.J. Stat. Ann. 17:17C–1.

10. Those policyholders challenged the Commissioner's approval of the plan, claiming the Plan was unfair in that it (1) wrongfully allowed policyholders of certain stock subsidiaries of the mutual company to share in the demutualization compensation and (2) wrongfully allowed Prudential's non-participating policyholders to partake in the basic variable component of the demutualization compensation. The policyholders also argued that the demutualization statute was unconstitutional.

11. The policyholders are currently seeking a review of the Appellate Division's decision. Prudential's brief at 11, n. 9.

12. This is not the first lawsuit that has been brought against Prudential regarding events surrounding its demutualization process. *See, e.g., Liebman v. Prudential Financial, Inc.,* No. CIV. A. 02–2566, 2002 WL 31928443, (E.D.Pa. Dec.30, 2002) (dismissing Plaintiffs' claim that Prudential committed

ment in which Prudential had promised not to shift the Costs & Expenses back to the Plaintiffs.

Plaintiffs maintain that the Costs & Expenses should have been among the payments (e.g., the Y2K preparation costs) that the Formula required Prudential to add back into the "surplus" for the purposes of calculating the amount of consideration policyholders would receive. Complaint ¶ 29. Because it was not, Plaintiffs argue, the Formula breaches the terms of the Settlement Agreement.

### Jurisdiction

Plaintiffs allege that the court has jurisdiction over their claim. At first blush, this contention appears correct for two reasons. First, resolution of Plaintiffs' breach of contract claim would require interpretation of the Settlement Agreement, and Judge Wolin explicitly retained exclusive jurisdiction over matters relating to interpretation of the Settlement Agreement. *In re The Prudential Insurance Company of America Sales Practices Litigation*, 962 F.Supp. at 566. Courts have repeatedly affirmed the power of a court approving a settlement agreement to exercise its discretion to retain jurisdiction over the enforcement of that agreement, so long as it does so explicitly in the dismissal order, which Judge Wolin did. *Kokkonen v. Guardian Life Ins. Co. of America*, 511 U.S. 375, 114 S.Ct. 1673, 1676, 128 L.Ed.2d 391 (1994). *Accord e.g., Shaffer v. GTE North, Inc.*, 284 F.3d 500, 503 (3d Cir.2002); *In re Phar–Mor, Inc. Securities Litigation*, 172 F.3d 270, 274 (3d Cir.1999). Second, even if Judge Wo-

lin had not retained exclusive jurisdiction in *this* court, a federal court would have jurisdiction over Plaintiffs' breach of contract claim under 28 U.S.C. § 1332 because there is complete diversity among the parties.

■ After further consideration, however, the court concludes that it lacks—and all federal courts lack—jurisdiction to decide this case because such jurisdiction belongs exclusively to the Appellate Division.[13] This is because though on its face Plaintiffs' claim is for breach of contract, in its substance it is actually a challenge to the Commissioner's approval of the Plan, which under New Jersey law may only be made in the New Jersey state court system.

\* \* \* \*

Although Plaintiffs frame their allegation as a claim for breach of the Settlement Agreement, what they are actually challenging is the fairness of the Plan that includes the Formula. Plaintiffs themselves, in their Reply Brief, concede this fact when they observe that "Prudential could have structured its demutualization plan in accordance with the Settlement, but it did not, and that is precisely why Plaintiffs bring this case." Plaintiffs' Reply Brief at 9–10. In the Complaint, Plaintiffs even specify the part of the Plan to which they object. Complaint ¶¶ 28–29.

When Plaintiffs challenge conduct that is mandated by a Plan, or omissions permitted by a Plan, they actually challenge that Plan itself. *See, e.g., Craft v. Florida Federal Savings & Loan Association*, 786

---

fraud and negligent misrepresentation when it told them their Trust was not eligible for consideration under the demutualization plan when in fact it was).

**13.** Prudential appears to be making this assertion, albeit somewhat indirectly. The company does not make an explicit 12(b)(1) motion for dismissal due to lack of subject

matter jurisdiction, but does open its Brief with the argument that the Complaint "should be dismissed because this court is *not the proper forum*." Defendant's Brief at 8. (Emphasis added). In its Reply Memorandum, Prudential claims more boldly that "[t]here is no jurisdictional basis for Plaintiffs' current attack." Reply Brief at 4.

F.2d 1546, 1552–53 (11th Cir.1986) (finding that a challenge to a demutualizing company's increase in the size of its stock offering was actually a challenge to the demutualization plan because the terms of that plan allowed—indeed required—the increase). The court will treat this claim as what it actually *is*, as opposed to what the Plaintiffs' *call* it.

\* \* \* \*

Because Plaintiffs challenge the Plan, as opposed to independent conduct on the part of Prudential, the injury they claim "is wholly a consequence of the [Commissioner's] approval of the Plan." *Harr v. Prudential Federal Savings and Loan Association*, 557 F.2d 751, 754 (10th Cir. 1977). As such, the proper form for Plaintiffs' challenge would thus have been an appeal of that approval to the Appellate Division.[14]

New Jersey law explicitly requires that any and all challenges to the Commissioner's decision be raised exclusively in New Jersey courts. N.J. STAT. ANN. 17:17C–4(h) ("The commissioner's order approving or disapproving a plan of reorganization shall be a final agency decision subject to appeal in accordance with ... the Rules Governing the Courts of the State of New Jersey"); R. 2:2–3(a)(2) ("appeals may be taken to the Appellate Division as of right ... to review final decisions or actions of any state administrative agency or officer"); *In re Failure by the Dep't of Banking & Ins. to Transmit a Proposed Dental Fee Schedule to OAL*, 336 N.J.Super. 253, 764 A.2d 494, 498 (App.Div.2001) ("The exclusive method for review of action or inaction of a State administrative agency ... is by direct appeal to [the Appellate Division]") (internal citations omitted).[15]

The Appellate Division shows "substantial deference" to decisions of the Commissioner; in order to prevail there, a plaintiff must fulfill the heavy burden of demonstrating that the Commissioner's decision was "arbitrary and capricious, unreasonable, or violative of expressed or implicit legislative policies." *See, e.g., Id.* at 499, 501. *See also In re Reorganization of Medical Inter–Insurance Exchange of New Jersey*, 328 N.J.Super. 344, 746 A.2d 25, 30 (App.Div.2000) (the agency decision carries a strong presumption of reasonableness, and the court must not substitute its judgment for that of the agency ... the expertise of the Commissioner "in the field of insurance must be given great weight.").

Plaintiffs may not avoid this burden by mischaracterizing their claim as a common law breach of contract claim rather than what it actually is—a challenge to the Plan and the Commissioner's approval of it. *See, e.g., Mutschler v. New Jersey Department of Environmental Protection*, 337 N.J.Super. 1, 766 A.2d 285, 289–90 (App. Div.2001) ("The Appellate Division's exclusive jurisdiction does not turn on the theory of the challenging party's claim or the nature of the relief sought ... Thus, this court's exclusive jurisdiction extends ...

---

**14.** Plaintiffs maintain that because they claim the Plan violated the Settlement Agreement (a common law breach of contract claim), the Commissioner lacked power to consider it. Reply Brief at 5. That the Commissioner had such power is evidenced, however, by the fact (as described above) that in his opinion he explicitly considered the commitments Prudential made to parties to the Settlement Agreement and the effect that demutualization might have on Prudential's fulfillment of those commitments.

**15.** *See also* N.J. STAT. ANN. 17:23A–19 ("Any person subject to an order of the commissioner under section 17 ... or any person whose rights under this act were allegedly violated may obtain a review of any order ... of the commissioner by filing in the ... Appellate Division"); *Federal Pacific Electric Co. v. New Jersey Department of Environmental Protection*, 334 N.J.Super. 323, 759 A.2d 851 (N.J.App.Div.2000) (referring to its "exclusive jurisdiction over the final decisions or actions of state administrative agencies or officers").

to claims that are joined with claims within the jurisdiction of another court ... If a challenge to the action or inaction of a state administrative agency is brought in a trial court, that court has the responsibility to transfer the matter to this court on the motion of a party or 'on its own initiative.' ").[16]

Though in another context, courts have held that the plaintiff "is master to decide what law he will rely upon," [17] even in that context a federal court will not exercise jurisdiction over a case as framed by the plaintiff if "the claim appears to be immaterial and made solely for the purpose of

obtaining jurisdiction." *Steel Company v. Citizens for a Better Environment,* 523 U.S. 83, 89, 118 S.Ct. 1003, 140 L.Ed.2d 210 (1998).

Several courts of appeal have considered the analogous situation in which a plaintiff challenges a *federal* agency's final approval of the defendant company's demutualization plan in district court—when exclusive authority to review such approvals lies with the federal court of appeals—by claiming the plan violates a federal law. All of these courts have held that the plaintiff may not, through "artful pleading," [18] escape review by the appeals court

---

**16.** The Texas district court recognized that Plaintiffs' strategy was improper in this way; Judge Cobb wrote in his Order transferring the case to this court that "this suit seeks to disrupt the established statutory scheme by attempting to overturn the New Jersey Commissioner's decision in a Texas court without naming him as a party." (DA 19).

**17.** To determine whether or not "arising under" or "federal question" jurisdiction exists under 28 U.S.C. § 1331, courts apply the "well-pleaded complaint" rule, which provides that "federal jurisdiction exists only when a federal question is presented on the face of the plaintiff's properly pleaded complaint." *Caterpillar Inc. v. Williams,* 482 U.S. 386, 392, 107 S.Ct. 2425, 96 L.Ed.2d 318 (1987). This, in effect, means that "the party who brings a suit is the master to decide what law he will rely upon." *The Fair v. Kohler Die & Specialty Co.,* 228 U.S. 22, 33 S.Ct. 410, 57 L.Ed. 716 (1913).

Were the court to exercise jurisdiction over the claim Plaintiffs now bring, however, it would not be the solid, statute-based "federal question" jurisdiction of § 1331, but rather mere ancillary jurisdiction to enforce its own order. *Kokkonen,* 511 U.S. at 381, 114 S.Ct. 1673 ("if the parties' obligation to comply with the terms of the settlement agreement ... [are] part of the order of dismissal ... a breach of the agreement would be a violation of the order, and ancillary jurisdiction to enforce the agreement would therefore exist."). The exercise of such jurisdiction to enforce its own order is discretionary; the court was under no obligation to reserve it in the first

place. *Id.* ("If the parties *wish* to provide for the court's enforcement of a dismissal-producing settlement agreement, they can seek to do so. When the dismissal is pursuant to Federal Rule of Civil Procedure 41(a)(2) ... the court's retention of jurisdiction over the settlement contract ... may, *in the court's discretion,* be one of the terms set forth in the order.") (second emphasis added).

Federal question jurisdiction was granted by statute to serve the lofty purpose of "ensur[ing] the availability of a forum designed to minimize the danger of hostility toward, and specially suited to the vindication of, federally created rights," *Ivy Broadcasting Co. v. American Tel. & Tel. Co.,* 391 F.2d 486, 492 (2d Cir.1968). The Supreme Court has noted that jurisdiction to enforce a settlement agreement is not nearly so urgent; in fact, "jurisdiction over [settlement] contracts is in no way essential to the conduct of federal-court business." *Kokkonen,* 511 U.S. at 381, 114 S.Ct. 1673. To hold that a plaintiff can, merely by articulating a claim that properly belongs in state court as one that requires interpretation of a settlement agreement, attain federal jurisdiction over that claim and avoid deferential state court review when district court jurisdiction to enforce a settlement agreement is "in no way essential," makes the plaintiff more than "master of his claim." It enables him to shop for forums and attendant standards of review to such an extent that he might become "master of the result."

**18.** The "artful pleading" doctrine ordinarily refers to the requirement that a court "peer

and the deference that court must show to agency decisions.

In *Craft*, for example, subscribers to a stock offering by a demutualizing company claimed that the company violated federal securities law in the process of demutualizing. The district court dismissed for lack of subject matter jurisdiction because it construed the claim as a challenge to the agency approval of the demutualization plan, and such challenges could, by statute, only be brought before the court of appeals. The Eleventh Circuit affirmed, noting that it "view[ed] the [Plaintiffs'] antifraud claims as bare bones allegations made to escape the exclusive review provisions of the [statute giving the court of appeals exclusive jurisdiction over petitions to review the agency's decisions]." *Id.* at 1554.

Similarly, in *Harr*, depositors in a mutual association claimed that the plan authorizing the association's conversion into a stock association violated federal securities law. The Tenth Circuit held that

> The cause of action, no matter how otherwise described, must in the first instance be a challenge to the approval by the Bank Board of the plan of conversion ... It is "The Plan" itself which is the real basis for the arguments advanced here by Plaintiffs. The attempted reliance on Rule 10b–5 is at best a secondary or derivative position ... the sole thrust of Plaintiffs' argument is directed to what in reality was the agency decision. This attack cannot be changed in its substance by a Rule 10b–5 gloss in what is really a collateral proceeding directed to derivative matters or consequences.

*Harr*, 557 F.2d at 753–54. *See also Ordower v. Office of Thrift Supervision*, 999 F.2d 1183, 1188 (7th Cir.1993) (Plaintiffs challenging agency approval of a demutualization plan "may not [rather than appeal the agency decision to the court of appeals] wage [in district court] a collateral attack on the valuation approved by the [agency] by describing the repetition of that valuation in the proxy materials as a form of fraud or deceit").

In these cases, federal statutes provided that the court of appeals had jurisdiction to review the agency action. The courts found that the district courts lacked jurisdiction in order to comply with Congressional intent that animated those federal statutes regarding which court within the federal system had jurisdiction to hear the appeals from final agency action. Considerations of federalism make it all the more urgent that the court find an absence of jurisdiction in this case as the clear intent with which the court must comply is that of the New Jersey state legislature. N.J. Stat. Ann. 17C–4 (h).

### *Merits of the Claim*

Because the court holds that it lacks jurisdiction to decide this case, it may not reach the merits. *See Steel Co.*, 523 U.S. at 94, 118 S.Ct. 1003 ("Without jurisdiction the court cannot proceed at all in any cause. Jurisdiction is power to declare the law, and when it ceases to exist, the only function remaining to the court is that of announcing the fact and dismissing the cause.") (internal quotations and citation omitted). It is appropriate to note, however, that even if the court were to accept Plaintiffs' claim as they present it—as a breach of contract claim over which the

---

through what are ostensibly wholly state claims to discern the federal question lurking in the verbiage." *U.S. Express Lines Ltd. v. Higgins*, 281 F.3d 383, 389 (3d Cir.2002). In this case, obviously, the phrase refers to the inverse situation in which Plaintiffs have plead what is actually a state claim in terms that would give a federal court jurisdiction over the claim.

court has exclusive jurisdiction—the claim would likely fail on the merits.

Plaintiffs claim that Prudential breached the provisions of the Settlement Agreement in which the company agreed to pay for the Costs & Expenses.[19] Plaintiffs nowhere claim that Prudential reneged on this agreement and failed to pay for the Costs & Expenses. Instead, they argue that a breach occurred because the company's overall worth was reduced as a result of Prudential paying the Costs & Expenses, and hence Plaintiffs—several years later—received less demutualization compensation than they would have had there never been a lawsuit the costs and expenses of which Prudential was obliged to pay.

Even assuming, as the court would have to under FED.R.CIV.P. 12(b)(6), that all the allegations in the Complaint are true, it is difficult to understand how Prudential's conduct as described by Plaintiffs could fulfill the elements of any breach of contract claim. As Prudential points out, "[n]othing in the Settlement [Agreement] provides that Prudential was required to pay additional consideration to Plaintiffs to offset the collateral effects, if any, that the Settlement might have on the overall value of Prudential in the event it reorganized in the future." (Prudential's brief at 14).

The demutualization was an event wholly independent of the lawsuit and the Settlement Agreement in which it culminated. Had Prudential not paid the Costs & Expenses, its overall worth could have been reduced in some other way during the nearly four years that passed between the court's approval of the Settlement Agreement and the Commissioner's approval of the Plan. Thus, there is no way to be certain that the money Prudential expended on the Costs & Expenses would necessarily have been a part of the company's surplus at the time of demutualization had the company not been under order to pay for the Costs & Expenses.

The Settlement Agreement required simply that Prudential pay for the Costs & Expenses, which Prudential did. It is thus difficult to imagine how Plaintiffs could convince a court that Prudential failed to perform its duties under the contract.

Plaintiffs' alternative claim of unjust enrichment is even weaker. The first requirement of a claim for unjust enrichment is that the defendant have received a benefit. *Mayor and Council of Borough of Rockaway v. Klockner & Klockner,* 811 F.Supp. 1039, 1058 (D.N.J.1993). The Commissioner found, however, that "100% of the value of the ultimate parent of the reorganized insurer is allocated to eligible policyholders." (DA 196) Prudential did not retain any of its surplus. The company also did not receive any benefit from its failure to add to the amount divided up among eligible policyholders the amount the company had paid for Costs & Expenses, as Plaintiffs suggest it should have. Plaintiffs thus have not stated a claim for unjust enrichment.

### CONCLUSION

For the foregoing reasons, the court will dismiss for lack of subject matter jurisdiction. An appropriate order will be entered.

---

**19.** It is not clear which law of contracts—state or federal—a court would be obliged to apply here. *See* Jeffrey A. Parness and Matthew R. Walker, *Enforcing Settlements in Federal Civil Actions,* 36 IND. L.R. 33, 47–48 (2003).